SARAH POUMEROULE, Respondent, v. POSTAL TELEGRAPH CABLE COMPANY, Appellant.

**Kansas City Court of Appeals, December 9, 1912.**

1. **NEGLIGENCE: Guy Wires Across Sidewalk.** Plaintiff sued for damages for injuries she received by colliding, in the night time, with some unencased guy wires which stretched over the sidewalk to support a telegraph pole. She was ignorant of the presence of the wires and could not see them on account of darkness. *Held,* that the questions of defendant's negligence and of plaintiff's contributory negligence were for the jury to determine.

2. ————: **Telegraph Companies: Right to Use Streets.** The exercise of the right of a telegraph company to maintain a telegraph line and its necessary appurtenances in a public street is burdened with the duty to exercise reasonable care to construct and maintain its line in a manner reasonably safe to travelers.

3. **EVIDENCE: Physicians and. Surgeons: History of Case.** A physician, called as a witness by his patient may testify about the present symptoms of his patient and repeat the statements of the patient to him relating to such symptoms but should not be allowed to repeat the history of the case given by the patient during the examination.

Appeal from Buchanan Circuit Court.—*Hon. Wm. D. Rusk,* Judge.

REVERSED AND REMANDED.

*Gage, Ladd & Small* for appellant.

(1) It was error to permit Dr. Gray to testify that the plaintiff stated to him that she had been injured. Gibler v. Railroad, 129 Mo. App. 93; Holloway v. Kansas City, 184 Mo. 19; Dunlap v. Railroad, 145 Mo. App. 215; Brady v. Traction Co., 140 Mo. App. 421. (2) The testimony of Mrs. Churchill and Mrs. Metz that the plaintiff afterwards complained to them of her injuries should not have been admitted. Her statements were no part of the *res gestae.* Leahey v.

Railroad, 97 Mo. 165; and (4)   Dr. Gray should not
have been permitted to testify as an expert that in his
opinion the physical condition of the plaintiff was
caused and would be caused by the accident of May 6.
1907.  Glasgow v. Railroad, 191 Mo. 347; Smith v. Kan-
sas City, 125 Mo. App. 150; Holtzen v. Railroad, 159
Mo. App. 370.  If plaintiff's condition might have been
produced by two causes, for only one of which the de-
fendant was liable, the evidence must point, with rea-
sonable certainty, to that cause, or there can be no re-
covery.  No such certainty appears in this case.  Smart
v. Kansas City, 91 Mo. App. 586; Spiro v. Transit Co.,
102 Mo. App. 250; Young v. Railroad, 113 Mo. App.
636; Fowler v. Elevator Co., 143 Mo. App. 422; Warner
v. Railroad, 178 Mo. 125.

*Charles H. Mayer* for respondent.

JOHNSON, J.—This is an action to recover dam-
ages for personal injuries plaintiff alleges were
caused by negligence of defendant.

The injury occurred at eight o'clock p. m., March
6, 1907, near the intersection of King Hill and Kansas
avenues in South St. Joseph.  King Hill avenue runs
north and south and is the main thoroughfare connect-
ing South St. Joseph with the old and main part of the
city.  It is paved and is crossed by Kansas avenue
which at this intersection makes a jog, the eastern pro-
longation being some distance south of the street west
of King Hill avenue.  Northbound cars running on
King Hill avenue have a regular stopping place at the
northwest corner of the intersection of the eastern ex-
tension of Kansas avenue and King Hill avenue and
this point is southeast of the southwest corner of the
intersection of the westward portion of Kansas avenue.
Defendant maintained a telegraph line on King Hill
avenue and one of the guy poles of this line was at a
point in the sidewalk on the west side of the street

about nine feet south of the southwest corner of the street intersection and just inside the curb line. The top of the pole leaned southward and two guy wires designed to hold the pole in position ran from its top to an anchor sunk in the sidewalk about five feet south of the base of the pole. These wires were not encased and plaintiff was injured by colliding with them. Accompanied by her son, she had come from her home eastward on Kansas avenue and had crossed to the east side of King Hill avenue to the stopping place for northbound cars, intending to board a car for North St. Joseph. While waiting for a car she discovered that her son had forgotten a .package he intended to take with him. She started back to get it leaving her son to await her return. She took the most direct course and stepped onto the sidewalk on the west side of King Hill avenue at a point a few feet south of the guy pole we have described. Ignorant of the presence of the guy wires, and not being able to see them on account of the darkness she collided with them and one of them struck her across the breast with enough force to make her reel backward and almost lose her balance. Attracted by her cry her son came to her assistance and together they ascertained that the obstruction to her way was the unsheathed guy wires. Not realizing that she had been injured by the blow on her breast she went home, obtained the package and returned. She and her son then boarded the first car that came along and went to North St. Joseph, where they spent the evening at a social entertainment. Plaintiff participated in dancing, but complained during the evening of pain in her breast. The next morning she discovered that her breast had been bruised by the blow. She did not consult a physician, but treated herself with home remedies. The discoloration disappeared but soreness remained in the place and in time the mammary glands exhibited symptoms of serious affection. Finding these symptoms would not yield to her own

treatment, plaintiff consulted a physician but not until the lapse of eleven or twelve months from the' time of her injury.    The glands had become enlarged and hardened in places and to prevent this condition from developing into a malignant phase the physician performed an operation in which he removed all of the right breast and a large part of the left.    The operation was successful and at the time of the trial plaintiff had fully recovered.

It appears from the evidence of plaintiff that while the darkness was too intense for her to see an object as small as the wires there was light enough to disclose the presence of larger objects.    There was a street light about 400 feet south on King Hill avenue and another the same distance north, but there were intervening obstructions such as shade trees and the night was misty and foggy.    The negligence on which plaintiff relies for a recovery was the failure of defendant to encase the lower ends of the guy wires in iron pipes.    The answer, in effect, is a general denial. Plaintiff prevailed at the trial and the action is here on the appeal of defendant from a judgment of $1000 recovered by her.

First we shall consider the argument of defendant in support of its contention that a demurrer to the evidence should have been sustained.    The evidence of plaintiff abundantly supports the conclusion that defendant was negligent in not encasing the guy wires. The right of defendant to maintain a telegraph line and its necessary appurtenances in the public street is unquestioned but the exercise of such right was burdened with a duty towards others rightfully using the public highway.    This duty required of defendant the exercise of reasonable care to construct and maintain its line in a manner reasonably safe to travelers.    King Hill avenue was a busy street and defendant was duty bound to anticipate the likelihood of pedestrians crossing the street as plaintiff did on the occasion in

question and to anticipate that an object so inconspic-
uous as an unguarded guy wire might prove a danger-
ous trap or snare to the unwary at times when darkness
would obscure all but prominent objects. [Bentley v.
Telephone Co., 142 Mo. App. 215, and cases cited.]
Unlike the case to which we have just referred, the
facts and circumstances of the present case do not con-
vict plaintiff of contributory negligence as a matter of
law. In the Bentley case the plaintiff's evidence por-
trayed the darkness as so intense as to obscure ob-
jects of the prominence of a telegraph pole at a dis-
tance of even two feet, and we held that the unsheathed
wire could not have been the proximate cause of the
injury since the plaintiff's method of travel would have
brought her into collision with the wire whether en-
cased or not. In the present instance plaintiff, accord-
ing to her testimony, was looking ahead, observing
proper care, and had sufficient light to enable her to
see and avoid the wire had it been encased. The ac-
ceptance of this account of the occurrence compels the
conclusion that the negligence in leaving the wire un-
guarded by casing was the direct and proximate
cause of the injury and that plaintiff was not at fault.
The questions of defendant's negligence and of plain-
tiff's contributory negligence are presented by plain-
tiff's evidence as issues of fact for the triers of fact to
aetermine. It is argued by defendant that the evidence
fails to show with sufficient certainty the causal re-
lation between the blow and the subsequent affection
of plaintiff's breast. The physician who treated
plaintiff testified that the disease might have been
of traumatic origin but this opinion was contradict-
ed by the expert evidence introduced by defendant.
It is conceded that the disease might have resulted
from other causes, and the rule is urged that where
the injury in controversy might have resulted from
two or more causes for one of which the defendant
would be liable and for the others would not be lia-

ble, the burden is on the plaintiff to show with rea-
sonable certainty that the cause for which the defend-
ant would be liable produced the injury.

We think the evidence of plaintiff does point
with reasonable certainty to the collision with the
guy wire as the cause of the disease which subsequent-
ly appeared. We would not be justified in denounc-
ing the expert evidence of plaintiff as wholly unworthy
of belief. We have no judicial knowledge of the causes
of the disease in question and to hold that defendant's
expert evidence on the subject is true and that of
plaintiff false, is a conclusion that could be reached
only by an invasion of the province of the triers of
fact. Moreover expert evidence at best is only advis-
ory. The proneness of doctors to disagree has passed
into a proverb and this tendency is never more marked
than in the trials of lawsuits where doctors are ar-
rayed against each other on the witness stand. The
jury were entitled to exercise the right of rejecting
all of the expert evidence and if the facts and circum-
stances adduced by plaintiff were such as to induce
a reasonable conclusion among men of common sense
and experience that the disease had its origin in the in-
jury in question, the jury should be allowed the privi-
lege of adopting such conclusion. It appears that
plaintiff was in good health before her injury; that
she received a severe blow on her breast, that the sore-
ness and tenderness caused by the injury continued
despite her efforts and that finally the soreness ap-
peared to result in a diseased condition of the area
affected by the blow. We have here a chain of conse-
cuential events completely connecting the disease with
the injury. The jury were not compelled to resort to
guess and speculation to reach a verdict for plaintiff,
and we hold that the burden of proof relating to this
issue was fully discharged. [Sharp v. Railway, 213
Mo. 517.] The demurrer to the evidence was properly
overruled.

Defendant complains of a number of rulings on questions of evidence but only one of these complaints. is well founded. In the direct examination of the physician who treated her, plaintiff's counsel asked questions that called for the statement that when he examined plaintiff she told him of her injury and related its history. Defendant objected on the ground that such evidence was hearsay and the objection was overruled.

There is some question of the timeliness of the objection under the rule that requires an objection to be interposed before the answer is given; but our understanding of the colloquy in the record is that the tardiness of the objection was accidental and not intentional and that as soon as the point was made, counsel for defendant did all he could to raise the question of the propriety of the evidence and that his motion to strike out was overruled, not on the ground that it came too late, but on the ground that the evidence was not objectionable. We think the evidence thus called in question came under the ban of the hearsay rule and that prejudicial error was committed in overruling the objection. The rule in this State is that a physician introduced as a witness by his patient in a case of this character may testify about the present symptoms of his patient and repeat the statements of the patient to him relating to such symptoms but should not be allowed to repeat the history of the case given by the patient during the examination. [Gibler v. Railroad, 129 Mo. App. 93; Holloway v. Kansas City, 184 Mo. 19; Dunlap v. Railroad, 145 Mo. App. 215; Brady v. Traction Co., 140 Mo. App. 421.]

The statement of plaintiff to the physician that the origin of the disease was a blow she received on the breast was the narration of a past event and the repetition of that statement was hearsay. In view of the sharp conflict in the evidence over the issue to which this testimony was addressed the error must have been

harmful to defendant and, therefore, should be regarded as sufficiently serious to call for a new trial of the case. We find no other prejudicial error in the record, but for that noted the judgment is reversed and the case remanded. All concur.