SARAH POUMEROULIE, Respondent, v. POSTAL TELEGRAPH & CABLE COMPANY, Appellant.

Kansas City Court of Appeals, April 6, 1914.

1. NEGLIGENCE: Personal Injuries: Telegraph Lines: Guy Wires. The plaintiff sued to recover for personal injuries sustained by colliding with guy wires connected with the defendant's telegraph line maintained in one of the public streets of St. Joseph. The cause was considered in a former appeal (167 Mo. App. 533), but the defendant now contends that the evidence is so vitally different from the former record that it is insufficient in law. Held, that the demurrer to the evidence was properly overruled.

2. Evidence: Witnesses: Experts. When the opinion of plaintiff's medical experts seems as reasonable as the contradictory opinions, it is for the jury to say whether they would be guided by one or the other or by neither of such opinions.

Appeal from Buchanan Circuit Court.—*Hon. W. T. Ragland*, Judge.

AFFIRMED.

*Vinton Pike* and *Robert A. Brown* for appellant.

*Mytton & Parkinson* for respondent.

JOHNSON, J.—This suit was begun in 1911 for the recovery of damages for personal injuries inflicted upon plaintiff in March, 1907. Defendant appealed from a judgment rendered for plaintiff in the circuit court and we reversed the judgment and remanded the cause for error at the trial in the admission of

certain evidence. A second trial by jury ended in a verdict and judgment for plaintiff and again defendant appealed.

Plaintiff was injured by colliding with guy wires connected with a telegraph line maintained by defendant in one of the public streets of St. Joseph. The details of the injury and of its negligent origin appear in the report of our former decision (167 Mo. App. 533) to which we refer for a full understanding of the facts of the case. We held the trial court did not err in overruling defendant's demurrer to the evidence and that plaintiff was entitled to go to the jury on the issue of whether or not negligence of defendant in not encasing the wires was the proximate cause of the collision and on the further issue of the causal connection between the collision and the disease plaintiff insists resulted from it.

On the present appeal defendant renews the effort to have plaintiff's evidence declared insufficient in law but restricts its argument to the single proposition that there could have been no causal connection between the negligent blow plaintiff received in the collision and the subsequent disease from which she suffered. That issue, as stated, was fully considered on the former appeal and decided adversely to defendant but it is argued, in substance, that the evidence bearing on it is so vitally different from that which appeared in the former record as to call imperatively for an entirely different conclusion. The only differences we find in the two records are confined to the evidence of expert witnesses, to their expressions of opinion and supporting reasons. The facts and circumstances of the injury and of the appearance, progress and characteristics of the disease remain the same. The wires struck plaintiff violently on the breast leaving a mark across its surface. There was immediate pain in the mammary glands followed by tenderness and soreness which continued despite her

persistent attempts to allay them by applications of home remedies. In time a hardening and swelling of the glands appeared and plaintiff, becoming alarmed, consulted a physician. This was more than a year after the injury but there had been no cessation of the soreness and no relaxation of plaintiff's efforts to remove it. After treating the disease for a time the physician, to keep it from passing into a malignant stage, performed an operation in which he removed all of the right breast and a large part of the left.

At the first trial this physician testified that the disease might have had its origin in a violent external blow. At the last trial he expressed the same opinion but had come to the conclusion that the disease was a species of tumor known to medical science as a *fibre adenomata*, a benign glandular growth which might result from traumatism or from a number of other causes such as female diseases or functional activities incident to the bearing and nurture of children. He admitted on cross-examination that he had not found any authority in medical literature for his opinion that the disease could be referable to an external injury. Two other physicians introduced as experts by plaintiff testified, in substance, that a tumorous growth of the mammary glands might result from injury as well as from other causes such as we have mentioned. Six physicians introduced by defendant testified to the contrary. Quoting the language of one of them: "An injury of that kind would terminate in one of two ways. If it produced a hemorrhage that hemorrhage would either be absorbed and the tissues go back to their normal condition, or it would become infected and an abcess would form. If that occurred it would occur within a week or ten days." They all asserted that a slow, gradual growth such as a *fibre adenomata* could not have its genesis in an injury to the breast.

The most that may be said of all the expert evidence from a judicial point of view is that it is contradictory. The doctors agree that the precise cause of benign tumors is unknown. The accepted theory seems to be that they arise from embryonic cells which lie dormant until stimulated into activity by some exciting or irritating cause. It may be true that an external blow will furnish such stimulus. The whole subject is one of technical cognizance and therefore one of which we can have no judicial knowledge. The opinion of plaintiff's experts seems as reasonable as the contradictory opinion and it was for the jury to say whether they would be guided by one or neither of such opinions. As we observed in our former opinion in following recent decisions of the Supreme Court, e. g. Sharp v. Railway, 213 Mo. 517; McDonald v. Railway, 219 Mo. 468, the expert opinions of doctors are merely advisory to the jury and may be rejected entirely if believed to be at variance with common sense and experience. It is well said in the case last cited: "It must be borne in mind, too, that doctors' theories under oath on the witness stand are merely advisory in character. Juries can take or leave that advice on the condition only that it seems reasonable or not to them; and because doctors disagree, it is not valid reasoning to say that juries should also disagree, or should take the advice of one set as against that of another, or should throw to the winds their common sense and, with minds littered up with conflicting medical advice, be unable to come to any agreement whatever, even as sailors (tossed to and fro by contrary winds) reach no harbor."

We are not bound to accept the final diagnosis of the disease now entertained by the physician who performed the operation nor to accept the belief that such disease could not be caused by an external injury. At the time of the injury plaintiff was in good health and so far as she knew had not been afflicted with any

female diseases. She had not borne children in the past four or five years and was not passing through nor nearly approaching a climacteric period. In view of these circumstances and of the apparent facts that the blow produced some sort of injury to the mammary glands, we think her evidence would lead to the conclusion as one of fact that one of the results of the blow was the gradual tumefaction of her breast. The court did not err in overruling the demurrer to the evidence.

The judgment is affirmed. All concur.