JESSIE PEARL MURPHY, RESPONDENT, v. ST. JOSEPH RAILWAY, LIGHT, HEAT & POWER COMPANY, APPELLANT.*

Kansas City Court of Appeals.   May 24, 1926.

*Corpus Juris-Cyc References: Evidence, 22CJ, p. 214, n. 42; p. 467, n. 6.

*Charles H. Mayer* for appellant.

*Mylton & Parkinson* for respondent.

ARNOLD, J.—This is an action in damages for personal injury.

Defendant is a corporation, organized and existing under the laws of the State of Missouri.   Together with other activities, it owns, controls and operates a street railway in the City of St. Joseph, Missouri, and as a part of said system it owns and controls tracks along Eleventh street in said city, commonly referred to as the South Park line, and owns, operates and controls street cars over said tracks.

It is not disputed that on May 27, 1924, plaintiff was a passenger for hire upon a southbound street car operated by defendant over its said line.   It is shown that the line runs south on Eleventh street, crossing Sycamore street at right angles.   On the occasion in question, the car upon which plaintiff was riding, at about six o'clock P. M., stopped at Sycamore street and plaintiff started to alight therefrom. As she was so alighting, while descending from the said car and before she had released the handhold at the front end of the car, the opera-

tor of the car closed, or permitted to be closed, the front door upon plaintiff's left forearm.

The testimony in plaintiff's behalf tends to show that as she was alighting from the car the step thereof was jerked from under her foot; that the act of closing the car door and that of folding the step were both done by one movement of a lever operated by the motorman; that the door was closed on her left arm between the wrist and the shoulder, thus holding her until the door could be opened; that while plaintiff was in this position the car started with a jerk, throwing plaintiff against said car and injuring her left shoulder and breast; that the car then was stopped, the motorman opened the door, her arm was released and she sank to the payment; that she arose, gave the motorman her name and address and walked a block and a half to her home; that Dr. Kearby was called and came the following morning when he examined and bandaged her; that her left arm and breast were discolored and she was confined to her bed for two weeks and to her home for a month by reason of said injury; that her shoulder was dislocated, her back wrenched, breast bruised and neck injured; that she suffered headaches and irregular menstruation periods; that a Dr. McGlothian took an X-ray picture of her left shoulder and a Dr. Owens was appointed by the court to make an examination of her.

There is no material dispute as to the actual facts to be considered on this appeal, but there is a contested issue as to the extent of plaintiff's injury, especially as to the pathological results thereof. Dr. H. D. Kearby, plaintiff's attending physician, testified that he reduced the dislocation of the left shoulder; that plaintiff was nervous and that the X-ray picture disclosed there was no fracture; that by digital manipulation and from the history of the case given him by plaintiff, he determined that plaintiff had cancer of the left breast; that he made no other test to verify this diagnosis.

The question as to whether or not plaintiff has cancer of the breast, and if so, whether it is a result of the injury complained of is the principal issue on this appeal.

The record shows the testimony on behalf of defendant was to the effect that the door and steps of the car worked together automatically; that the door would close simultaneously with the raising of the step; that the car did not move while plaintiff was alighting, that the car did not jerk; that plaintiff did not fall; that on request, she wrote her name and address on a card for the motorman after she had alighted.

Dr. J. F. Owens who was appointed by the court, as above stated, testified that he examined plaintiff on January 8, 1925, and found no lumps in her breast; that the glands of the breast are nodular and that he discovered nothing in plaintiff's breast indicating any injury; that

plaintiff said her shoulder pained her, but that the symptoms were entirely suggestive and he was compelled to accept plaintiff's word for it; that he could find nothing to indicate an injury had been sustained by her. He further stated that it is impossible to make a positive diagnosis of a cancer of the breast by manipulation alone; that the proper way is to view a cross section of the suspected tissue under a microscope; that once a cancer nodule develops in the breast, it remains there constantly unless removed; that trauma to the breast will sometimes produce suitable conditions for development of the cancer germ; that there are causes of cancer other than trauma; that pain rarely accompanies the early stages of cancer and that attention is first attracted to the nodule, and if the nodule is cancerous, pain will follow; that the only nodules he found in plaintiff's breast are milk glands and that he found no cancerous nodules there.

Dr. McGlothlan, testifying for defendant, stated he took an X-ray photograph of plaintiff's left shoulder on June 4, 1924, and that if plaintiff sustained an injury on May 27, 1924, resulting in cancerous nodules of the breast, the same would have been easily discoverable in January, 1925, the date of Dr. Owens' examination.

The amended petition, upon which the cause was tried, alleges as follows in respect to the alleged injury:

"That said injury is likely to produce and is producing in plaintiff's left breast and chest a cancer or tumor or mal growth; that she suffered a permanent and severe shock to her nervous system; that as a result of her injuries her menstruation has been made more painful and irregular;" etc.

The answer is a general denial, and upon the issues thus made, the cause went to trial to a jury, resulting in a verdict and judgment for plaintiff in the sum of $3500. Motions for a new trial and in arrest were unavailing and defendant appeals.

The errors assigned are as follows: (1) The court erred in permitting Dr. Kearby to testify that plaintiff has cancer as a result of the injury complained of, because such testimony of the witness was founded upon the history of the case, was hearsay and was inadmissible; that the admission in evidence of such testimony was prejudicial error; (2) that the court erred in refusing defendant's instruction A-1 which sought to instruct the jury that there was no evidence that plaintiff has a cancer as a result of the alleged injury; (3) that the verdict is excessive, and (4) that the court erred in overruling the motion for a new trial.

Defendant directs its attention chiefly to the action of the court in receiving the testimony of Dr. Kearby relative to the basis of his diagnosis that plaintiff had cancer as a result of the alleged injury.

As stated above, Dr. Kearby was plaintiff's attending physician, and on direct examination during the progress of the trial, he testified, as follows:

"Q. Doctor, what has developed, first with reference to the breast, I will take that. A. At this time she had considerable pain in the breast and a few small nodules.

"Q. Have you watched the breast and had it under your care since that time? A. Yes, I have.

"Q. Tell the jury what is the trouble with her breast. A. I think at this time she is beginning carcinoma of the breast.

"Q. What do you mean by carcinoma? A. That is a name for cancer; one variety.

"Q. I wish you would state whether or not a woman who was getting off a car and had her arm caught in the car door and was on the car step and she received a blow, moderate but sufficient to cause black and blue places, without any break in the skin, anything of that kind, just the single blow, whether or not that would be a sufficient cause for the condition you find in the breast at this time? A. It would.

"Q. That would be reasonably expected to cause this condition? A. Yes."

And on redirect examination, this witness testified:

"Q. Did you receive a history of the condition surrounding it with reference to the pain in the breast? A. I did."

And on recross-examination, Dr. Kearby testified as follows:

"Q. Is this opinion you are giving based on that history? A. Yes.

"Q. This opinion you have given here? A. Yes.

"Q. As she gave it to you? A. Yes, from the examination.

"Q. Yes, and the history? A. Yes.

"Q. You considered the history with the rest of it? A. Yes."

Counsel for defendant moved to strike out the testimony of the witness concerning the condition of the woman's breast. The record shows the court stated he would not then rule on the question but would take it up later. Later on in the trial, the following occurred:

"JUDGE MAYER: I desire again to move the court to strike out the testimony of Dr. Kearby as to his diagnosis of plaintiff's injury, it having been shown by the evidence that it was based partly at least on the history of the case as received by the witness from plaintiff.

"THE COURT: The motion to strike out is overruled."

The error complained of is based upon this ruling by the court. It is urged that the testimony of Dr. Kearby just quoted is reversible error for the reason that such testimony was founded, at least in part, upon the history of the case as given by the patient and was hearsay.

In this position we think defendant is correct. It will be observed that Dr. Kearby did not state what plaintiff had told him relative to the history of the case. However, in answer to a hypothetical question, he did state, as an expert witness, that he based his diagnosis

partly on the history given him by plaintiff. It was held in the case of Kinchlow v. Railroad, 264 S. W. (Mo.) 416, l. c. 421, that:

"A physician may not state what his patient told him as to the manner of his injury and of his sufferings or symptoms prior to the time of his examination and then found his answer as an expert as to the cause of his condition at the time of such examination on such statements or history of the case. Such answer being founded on hearsay is inadmissible and constitutes reversible error. [Holloway v. Kansas City, 184 Mo. l. c. 39; Arnovitz v. Arky, 219 S. W. (Mo.) 623, 624; Magill v. Boatmen's Bank, 288 Mo. 489.]"

It was held in the case of Magill v. Bank, 288 Mo. 489, in effect, that the statements of a plaintiff with respect to her past physical condition are hearsay, and should not have been considered by the expert in expressing an opinion as a witness as to her physical condition at the time of the trial.

We have a case almost directly in point in Aronovitz v. Arky, 219 S. W. (Mo.) 620, and the court said l. c. 623, 624:

"Plaintiff contends the court erred in refusing to permit Dr. Phelps, who was treating deceased at the time of his death, to testify from his observation and the history of the case as he heard it what, in his opinion, caused the death of deceased, and confined plaintiff's inquiry to a hypothetical question. The following is the question for the exclusion of which plaintiff complains:

" 'From the history of the case as given to you, and as described by you here on the witness stand, and also from your personal treatment of the patient, and what you found on the patient, what, in your opinion, caused the death of Willmos Aronovitz?'

"It will be observed that the question was not restricted to statements or complaints made by the patient as to his condition at the time the doctor was making the examination, but included all such statements as may have been given to Dr. Phelps by the patient or the members of his brother's family concerning the previous cause of the patient's illness. This kind of a question was held to be improper in the very decision on which plaintiff relies. [Holloway v. Kansas City, 184 Mo. 19, 31, et seq., 82 S. W. 89.] The cases bearing on the point are reviewed in the opinion, and in conclusion this court said:

" 'The statements of plaintiff with respect to her past physical condition were mere hearsay, and should not have been considered by the expert in expressing his opinion as a witness as to her physical condition at the time of the trial. The decided weight of authority and the better reason, we think, supports this contention. It follows that the court committed error in allowing the expert witnesses to give their opinion based upon the history of plaintiff as they learned it from her in diagnosing her cause, or while treating her.' "

The same rule was followed by this court in Borowski v. Biscuit Co., 229 S. W. 424. [See also cases therein cited.]

It is the rule that a physician may properly testify to statements made by the patient relating to his condition at the time, but statements relating to a past condition or circumstances surrounding the receipt of an injury, or the manner in which it was received, are not admissible. [Freeman v. Ins. Co., 195 S. W. (Mo. App.) 545; Brady v. Traction Co., 140 Mo. App. 421, 124 S. W. 1070; Poumeroule v. Telegraph Co., 167 Mo. App. 533, 537, 152 S. W. 114; Holloway v. Kansas City, 184 Mo. 19, 39, 82 S. W. 89.]

On this point plaintiff contends that Dr. Kearby was plaintiff's attending physician after the injury, being called at 5 or 5:30 o'clock on the morning following the injury which occurred on the previous evening at about 6 o'clock; and being plaintiff's attending physician after the injury, his testimony, of which defendant complains, was proper. Cases are cited purporting to support this position, but upon examination, we find none of them of value to plaintiff in this respect.

We think the law is well settled that testimony of the character here complained of is clearly inadmissible and prejudicial, and so holding, the cause must be remanded for a retrial. There are other errors urged in support of the appeal, but as the case will be remanded for reasons already stated, no further discussion is necessary.

The judgment is reversed and the cause remanded for a new trial. *Bland, J.,* concurs; *Trimble, P. J.,* absent.