LUCILLE GOETZ and GEORGE FRANK GOETZ, Dependents of George Joseph Goetz, Deceased, (Claimants), v. J. D. CARSON COMPANY, Employer, and EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, Insurer, Appellants.—No. 40230.—206 S. W. (2d) 530.

Division One, December 8, 1947.

*John S. Marsalek* and *Moser, Marsalek, Dearing & Carpenter* for appellants.

126

*Carl A. Enger* for respondents.

[531] VAN OSDOL, C.—Appeal by the employer and insurer from a judgment of the circuit court affirming an award of the Missouri Workmen's Compensation Commission awarding $8,124

compensation to claimants-respondents, the widow and minor son of George Joseph Goetz, deceased.

The Commission found the facts to be that "employee, on July 9, 1945, sustained an accident arising out of and in the course [532] of his employment with J. D. Carson Company resulting in his death on August 11, 1945."

It is contended by appellants, (1) there was no competent evidence introduced tending to prove employee sustained injury by accident arising out of and in the course of his employment (Section 3691 R. S. 1939, Mo. R. S. A. sec. 3691); and (2) the award was excessive in amount.

It is now said, in view of the constitutional provision relating to the scope of judicial review of action of administrative agencies (Section 22, Article V, Constitution of Missouri, 1945), that in the review of the decision of an administrative tribunal ("in cases in which a hearing is required by law") the reviewing court is to determine whether, upon a consideration of the whole record, there is competent and substantial evidence to support the finding—the reviewing court is not to substitute its judgment on the evidence for that of the administrative tribunal; but the reviewing court is authorized to determine the question—could the administrative tribunal have reasonably made its findings and reached its result upon consideration of all the evidence before it; and the reviewing court has the power "to set aside decisions clearly contrary to the overwhelming weight of the evidence." Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S. W. 2d 647. This court has expressed the opinion that the award of the Workmen's Compensation Commission is now to be regarded "as having more nearly the force and effect of a judgment in a non-jury case under the new Civil Code." Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S. W. 2d 55; Section 114 (d), Civil Code of Missouri, Laws of Missouri, 1943, p. 388. See also Brown v. Weber Implement and Auto Company, Cause No. 40360, 357 Mo. 1, 206 S. W. (2d) 350, decided by Division Number Two, November 10, 1947.

The appellant-employer operates a furniture store in St. Louis and employs collectors in connection with its business. The claimants' decedent was employed as a collector by appellant-employer on April 1, 1945. It was employee's duty to make collections in the areas of St. Louis City and County "north of Delmar." The employer's collectors went out over their routes or territories and collected and adjusted accounts for their employer. They came into the employer's store in the afternoon about four-thirty or quarter to five and "wrote up" their reports. While other collectors used their automobiles in the performance of their duties, the automobile of employee, claimants' decedent, throughout the period of employ-

ment, was unfit for use and he was trying to cover his territory "afoot." The employer's credit manager, who had general supervision over all employees, knew employee was walking in working his territory. The evidence shows employee was a very conscientious worker.

On July 9, 1945, the employee left for work in the morning as usual with the materials and folders he used in his work. When he returned home about two o'clock in the afternoon, he was "limping quite badly"; at that time he told his wife he had turned his foot over on a loose brick in the sidewalk "down around Jefferson and Dixon (Dickson)." The foot was quite swollen and the ankle was discolored. He was in pain. Later in the afternoon he went "back to the store" to report his collections. That evening his foot "was swollen as large as a grapefruit . . . on the both sides and the ankle and up the ankle was swollen." There was evidence tending to show a pulmonary embolism developed from the sprained ankle causing employee's death August 11th.

According to the testimony of Emmanuel Fihn, secretary-treasurer of the employer, the deceased had called the employer's office by telephone "about one-thirty (July 9th). . . . . He (deceased) told me (Fihn) he stopped in some little place to get a bottle of soda pop, and coming out he had twisted his ankle." There was no objection interposed to this testimony. The witness Fihn further testified (over an objection by the employer and insurer upon the ground that the telephone conversation was hearsay), "He (deceased) said he had twisted his ankle. There was some loose brick in the sidewalk, but he was going on and make his calls. I suggested that instead of going on making his calls, [533] if that ankle hurt him to go to Dr. Harris." Deceased was in the store later, around "four-thirty or quarter to five. . . . He limped slightly on one foot."

Doctors Harris and Stevens testified, over objection, of deceased's statements of the history of his case, in which statements he told the physicians, in effect, that "on the morning of the 9th of July, 1945, while making collections, he stepped on some kind of stone on the sidewalk and his foot slipped down into a hole and turned his ankle." The claimant-widow was also allowed to testify of her husband's conversation in which he related the manner in which he had sprained his ankle. (The referee of the Workmen's Compensation Commission, in making his findings of fact and rulings of law, stated he had disregarded "that part of the testimony given in evidence by Lucille Goetz, the widow of employee, and Doctors I. J. Harris and Frank H. Stevens, his attending physicians, wherein they gave certain testimony purporting to have been statements made to them by the deceased employee after his alleged accident, in which statements to them he described the place and manner by which he had received

his alleged accidental injury, for the reason that said testimony is inadmissible as competent evidence, it being a narration of a past event and not a part of the res gestae, and,. therefore, it cannot be· found to comprise a part of the ultimate facts found in this case . . . ''

The insurer—in effect, the employer—had filed with the Workmen's Compensation Commission a "Report of Accident" (Section 3722 R. S. 1939, Mo. R. S. A. sec. 3722), under date of July 26, 1945, in which report the following statements were included,

"7. Date of alleged accident: 7-9-45.

"8. Place: Dixon St. east of Jefferson Ave. St. Louis. . . . (The intersection of Jefferson and Dickson is "north of Delmar" in St. Louis)

"13. Is accident under the Law? Unascertained. . . .

"23. Describe in full how accident happened: Employee alleges obstruction in sidewalk, loose bricks, sprained ankle. . . .

"30. Describe injury: Employee alleged sprained ankle. . . . ''

A temporary agreement was executed by deceased and employer in which it was expressly stipulated "that this temporary agreement to pay and accept compensation shall not be used as an admission against interest or of liability." Two payments, in total $60.00, were made, pursuant to the temporary agreement, by the employer to the employee in his lifetime.

The Commission's referee was correct in disregarding· the testimony of physicians (who had treated deceased) detailing the deceased's statements to them relating to the past circumstances and manner in which deceased's ankle had been sprained. The statements to. the physicians were not of a then existing condition, but were recitals of past events. The physicians' testimony was hearsay and inadmissible. Freese v. St. Louis Public Service Co., Mo. App., 58 S. W. 2d 758; Murphy v. St. Joseph Ry., Light, Heat & Power Co., 221 Mo. App. 670, 283 S. W. 994; Poumeroule v. Postal Tel. Cable Co., 167 Mo. App. 533, 152 S. W. 114. In the case of Wills v. Berberich's Delivery Co., 339 Mo. 856, 98 S. ·W. 2d 569, cited by claimants-respondents, the claim was based on injuries sustained in a fall whereby the infection of a boil on the employee's face began to spread. The physician's testimony, proffered by the employer, that the employee had made a statement to the effect "he had not sustained any injuries to his face by the fall" was said to be admissible because self-disserving and against interest. And, in the case at bar, the Commission's referee was right in disregarding the claimant-widow's testimony of her husband's declarations of the past events or circumstances in which he· had sustained the sprained ankle.· Hatfield v. Southwestern Grocer Co., Mo. App., 104 S. W. 2d 717; Weiler v. Peerless White Lime Co., Mo. App., 64 S. W. 2d 125. The testi-

mony of employer's secretary-treasurer, Fihn, admitted over objection, although competent to show the employee had reported an accident, was not competent to show the truth of the report. Weiler v. Peerless White Lime Co., supra. It was not shown the statements of deceased to [534] his wife and to Fihn had the spontaneity essential to render them admissible as part of the res gestae.

Relating to the probative effect of "Report of Accident"—the statements therein of what the employee "alleged" were evidence only of the fact that the employee had made the allegation. The report was not, in our opinion, an admission of the verity of the facts the employee had alleged. The employer in making the report did not adopt the employee's allegation of facts as the employer's own, as did the employer in making the report of accident in the case of Tralle v. Chevrolet Motor Co., 230 Mo. App. 535, 92 S. W. 2d 966; nor did the report recite as facts that the accident happened in a stated place and while the employee was performing stated work (from which facts it could be reasonably inferred the employee was "performing work within the scope of his employment"), as did the report in the case of Lumpkin v. Sheidley Realty Co., 227 Mo. App. 306, 53 S. W. 2d 386; nor did the report purport to state facts (although there was testimony the employer's manager, in making the report, relied upon what the employee had told him), as in the case of Floyd v. A. Y. McDonald Mfg. Co., 226 Mo. App. 444, 46 S. W. 2d 251. The report in the instant case, we believe, in probative effect is most like that made by the employer in the case of Becherer v. Curtiss-Wright Corporation, Mo. App., 194 S. W. 2d 740, and did not amount to an admission of the truth of the facts stated as "alleged."

Disregarding the incompetent evidence contained in the record, the facts shown in the whole record are meager; and, we believe, it is indeed a close question whether there is evidence sufficient upon which it can be reasonably determined the deceased was injured by accident in the course of his employment. The claimants had the burden of showing their decedent suffered injury, the result of accident arising out of and in the course of his employment. Snorgrass v. Cudahy Packing Co., 229 Mo. App. 944, 83 S. W. 2d 226; Weiler v. Peerless White Lime Co., supra; Freese v. St. Louis Public Service Co., supra. It has been said that an injury "arises 'out of' the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury; and that an injury to an employee arises 'in the course of' his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto." Wahlig v. Krenning-Schlapp Grocer Co., 325

Mo. 677, 29 S. W. 2d 128; Section 3691, supra. But it is thought no all-embracing definition of the phrase, "arising out of and in the course of his employment," has yet been framed. Every case involving the phrase "should be decided upon its own particular facts and circumstances and not by reference to some formula." Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. 2d 601; Wamhoff v. Wagner Elec. Corp., 354 Mo. 711, 190 S. W. 2d 915. In the instant case, it could be certainly said the evidence shows the decedent had sustained a sprained ankle, but where and under what circumstances with reference to his work?

The evidence (testimony of Fihn of the employee's statement by telephone), admitted without objection, tends to show deceased twisted his ankle when coming out of some little place where he had gone to get a soda. We believe no inference unfavorable to claimants' claim should be drawn from this circumstance alone; the employee, who worked territory comprising large areas of St. Louis City and County and whose tour of duty lasted through the working period of the day, might be reasonably expected to pause for refreshment sometime during the course of the day's work. A pause by an employee within reasonable limits of time and place to satisfy the needs of the body for food or drink, or even for refreshment, may well be considered as reasonably incidental to his work. Compare Markowitz v. National Headwear Co. et al., 210 N. Y. S. 673, 213 App. Div. 461. See also 71 C. J., Workmen's Compensation Acts, sec. 413, pp. 671-2.

It was not shown where in the course of his itinerary deceased sustained an accident with reference to a place where [535] it was his duty to make a collection or adjustment of an account for the employer, as was shown in the case of Wahlig v. Krenning-Schlapp Grocer Co., supra. The deceased, however, left his home for work in the morning, apparently in good physical condition; he took the materials and folders used in his work; in doing his work, he was walking; his employer knew he was walking; a sprained ankle may accidentally happen to a man when he is walking; during the hours of the working day he reported to his employer he had sprained his ankle; he returned to his home at about two o'clock in the afternoon, at which time he was limping badly and his foot and ankle were badly swollen, painful and discolored. The deceased at that time had not completed his tour of duty for the day, since he had yet to go to the store to report his day's work; when he reported his day's work, he was limping; the deceased was a man conscientious in the performance of his work. In our opinion an inference of compensable accident drawn from these facts is not a strong one; nevertheless, in view of the whole record, we are constrained to hold the evidence to be sufficient to sustain the award.

Having in mind the facts summarized in the preceding paragraph, we must move into the realm of conjecture in order to infer the employee, a conscientious worker, had, when injured during the hours of the working day, gone out of the course of his employment and was engaged in a pursuit or adventure of his own. The record contains no evidence of positive character in refutation of claimants' claim. The employer knew on July 9th the decedent claimed he had sprained his ankle; and on July 26th employer reported the accident as employee had alleged. Neither the employer nor insurer made an early investigation of the alleged accident. The appellant-insurer sent no one to see decedent in his lifetime. An investigation was made by insurer. The investigator ''went up to Jefferson and Dixon on three different occasions and made a house-to-house canvass.'' The investigation was made after the employee's death, which occurred thirty-two days after the alleged accident. The investigator did not then see or find anybody ''who had seen the accident or even heard of the accident.'' The people of that neighborhood are ''very transit, they move in and out.'' Such negative evidence, based on an investigation so remote in time and at a place where those who may have seen the accident were but transient residents, is of little weight.

■ As stated, appellants contend the award was excessive in amount. It is said Commission's computation of compensation was erroneous because based in part on moneys paid to employee as ''special expenses'' entailed on him by the use of his automobile in his employment. See Section 3710 (g) R. S. 1939, Mo. R. S. A. It was the testimony of employer's secretary-treasurer that in the contract of employment the deceased, employee, was to receive a stated amount in wages or in salary ''plus a car allowance. . . . He was to supply the car and pay for the gasoline and oil . . . '' Now, the evidence shows, as stated, the deceased had not used his automobile in his work—this the employer knew and, nevertheless, paid the full amounts to deceased upon which Commission's computation was based. We find it unnecessary to determine appellants' contention, inasmuch as no expense in the use of the automobile had been actually entailed on deceased by his employment.

The employee had not been engaged in the employment for the full year immediately preceding the accident. There was no evidence introduced for the purpose of showing the annual earnings of persons of the same class in the same employment and same location (or of neighboring employments of the same kind). See Subsection (c), Section 3710 R. S. 1939, Mo. R. S. A. The Commission computed the average weekly wage of employee by dividing the total amount earned by him, $573.32, by 83 (days worked); multiplying the quotient (average daily earnings) by 300 (working days in the year); and dividing the product by 52 (weeks). The Commission then pro-

134

ceeded to compute the total death benefit under the provisions of Subsection (b), Section 3709 R. S. 1939, Mo. R. S. A. We believe the Commission erred in using 83 working days in the computation. [536] The only pertinent evidence in the record shows the employee had worked 86 days, during which time he had earned $573.32, as stated. His average daily and weekly earnings were, therefore, less than the average earnings computed upon a basis of 83 working days.

The award should be corrected to an amount determined by a computation upon the basis of 86 working days, and the case should be remanded for that purpose; otherwise, the judgment should be affirmed.

It is so ordered. *Bradley, C.,* absent; *Dalton, C.,* concurs.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.