**STATE ex rel. J. R. DENTON, Respondent,**

v.

**PUBLIC SERVICE COMMISSION of the State of Missouri, Appellant.**

No. 22180.

Kansas City Court of Appeals.

Missouri.

March 7, 1955.

Thomas A. Johnson, Frank J. Iuen, Jefferson City, for appellant.

J. R. Rose, Thomas P. Rose, Jefferson City, for respondent.

SPERRY, Commissioner.

J. R. Denton, who will be referred to as plaintiff, applied to defendant, Public Service Commission, for a certificate of convenience and necessity authorizing him to render regular service to Independence, Kansas City, North Kansas City, Richmond, Henri-

etta and certain other points, as a regular carrier of freight by truck, and for certain interstate authority. A hearing was held at Richmond, case No. T 11606, on December 11 and 12, 1952, at which time applicant offered his evidence. The hearing was then recessed and, on April 10, 1953, the evidence of protestants, Orscheln Bros. Truck Lines, Inc., Wagner Freight Lines, Inc., and Williams Transfer Company, was heard at Jefferson City. On September 9, 1953, the Commission issued its report and order granting the interstate authority, but denying the intrastate authority sought. Plaintiff removed the cause to the circuit court, which held that the order was not supported by the record and remanded the cause to defendant. Defendant appealed.

■ Briefly stated the scope of our review is to determine whether the Commission could reasonably have made its finding and reached its result upon consideration of all the evidence before it. The court has the power to "set aside decisions clearly contrary to the overwhelming weight of the evidence." Our review, in this case, is similar to that of a court-tried case. Goetz v. J. D. Carson Company, 357 Mo. 125, 206 S.W.2d 520, 532.

It appears that Richmond, 45 miles distant from Kansas City, is served chiefly by Orscheln. Williams is authorized to render regular service from Kansas City, to Richmond and Henrietta. It furnishes daily service except Sunday, but did not, at the time the first hearing was held, maintain a freight depot at Richmond or Henrietta. Wagner renders regular service from St. Joseph through Kansas City, Richmond and Henrietta, three days per week. It maintains no depot at Richmond or Henrietta. The Santa Fe Railroad runs a train to Richmond from Kansas City, three times weekly.

Plaintiff formerly served the route which he now seeks authority to serve, but quit when the Commission denied his application for authority, some weeks before this hearing began. He has authority to serve an irregular route from Richmond and vicinity to various points, and return, except that

he may not serve points on a regular route, including Richmond and Henrietta.

Seventeen witnesses, business men of Richmond, gave evidence in support of the application. Mr. Conner (plumbing and heating) stated that he receives from one to three shipments weekly from Kansas City; that it takes a week for him to get such a shipment; that service is unsatisfactory.

Mr. Phipps (plumbing and heating), stated that freight delivered to Orscheln at Kansas City is delivered at Richmond from two to nineteen days later; that Williams' service is no better.

Mr. Smith (John Deere dealer and repairs), stated that he uses the services of both Williams and Orscheln, but that the service is very poor; that he never knows whether he will receive a shipment within three or four days, or a week, so uses his own truck for almost all of his freight service; that he has done so since Denton quit serving.

Mr. Pointer (plumbing and sheet metal), stated that he sometimes ordered daily from Kansas City; that Denton gave daily service; that, since he quit serving, witness uses rail most of the time and has not used either Orscheln or Williams very much.

Mr. Irons (plumbing and heating), uses his own truck to bring supplies to his place of business; has used all truck lines but the service was too slow and uncertain, so quit three years ago. Uses railroad for pipe shipments and his own truck for other merchandise. He needs daily, or next day service.

Mr. Lillard (ice cream manufacturing), ships major part of his products to Kansas City, Kansas City, Kansas, North Kansas City, Independence, and receives supplies from Kansas City. Sometimes freight lies on Orscheln dock at Richmond for two or three days. Williams doesn't have a dock at Richmond and service is slower than by Orscheln. Orscheln is unconcerned about settlement for damaged or lost goods. He

stated that he used the railroad for freight from the east because of Wagner's poor service, and that he uses his own trucks to handle most of his business; that he formerly used Denton.

Mr. Taber operates an auto supply business at Richmond and a wholesale auto supply business at Henrietta. He tried to use Williams' service but pick up service was too sporadic and undependable; it is the only service to Independence and cannot be contacted regularly. Orscheln has left freight on the dock at Kansas City for two or three days. He needs same day service, which Denton will give, if permitted to serve.

Mr. Maslan (clothing), said that service was so undependable that he uses his own station wagon to bring in his merchandise. The dock service of Orscheln, at Richmond, is such that he cannot use the service.

Mr. Lathrop (drugstore), needs next day service. He got it from Denton. With Williams' service Monday's order is delivered Thursday and, sometimes, Saturday.

. Mr. Lester. (oil and supplies), formerly used Denton's service, which was satisfactory. Can't use either Williams or Orscheln because too slow and unreliable. He said that Orscheln drivers were discourteous. He needs daily service, three or four times per week, from Kansas City. He now uses his own truck.

Mr. Golladay (variety store), now receives shipments via Santa Fe, two or three times per week, because Orscheln service is unsatisfactory, drivers discourteous, packages often broken, merchandise missing, can't collect damages. He finally quit using the service. Needs daily service but now uses Santa Fe when he can direct the routing of merchandise ordered.

Mr. Ewer (Chevrolet dealer and service station), stated that he needs daily service, every day, and would use Denton. Because of slow and uncertain delivery by protestant carriers, together with lost and damaged goods, for which he could not collect, he uses the mails and the bus except for shipments from Chevrolet plant, which are often received several days late. He stated that service was better because of the hearing then being held.

Mr. Settle (drugstore), buys supplies at Kansas City and St. Joseph. He stated that he must have daily service in order to hold his business; that the service from protestants is such that he now has Denton deliver merchandise at the home of witness' son, in the country, then witness transfers it by automobile to his store; that he used Denton's service before it was discontinued and will use it every day if it is authorized; that Wagner gives third day service from St. Joseph.

Mr. Pollock (I.H.C., dealer), stated that he needs overnight service from Kansas City. Would use Denton's service.

Mr. Hill (newspaper publisher), needs next day service. It has taken as long as eight days to receive an emergency shipment from Kansas City to Richmond. He would use Denton's service.

Mr. Handley (dehydrator plant at Henrietta), buys sacks, machine parts, and supplies at Kansas City. He stated that both Orscheln and Williams are very slow, varying from 24 to 60 hours from Kansas City; that it is not satisfactory for his business. He would use Denton's service.

Mr. Miller (publishing and printing), used Denton's service because he got dependable and quick service. Orscheln's service is poor, merchandise is often damaged, and it is difficult to collect damages. He stated that he now hauls his fine paper in the trunk of his own car to prevent damage, but would use Denton's service.

Dr. Gay (physician), needs drug delivery daily, which Denton could give. Needs the service.

Mr. Denton proposed to give overnight service from Kansas City and, if a customer wished, would deliver the same night. He would operate a 5 ton over-the-road truck, with an extra truck to pick up and deliver in Richmond.

At the April, 1953 hearing, protestants offered the testimony of three witnesses, each being an official or agent of one of the protesting carriers.

Mr. Williams stated that he furnishes regular daily service, except Sundays, from Kansas City to North Kansas City, Richmond and Henrietta; that his trucks are not loaded to capacity and that he has additional equipment for use, if needed; that the loss of business to Denton would detrimentally affect his ability to serve the public; that he maintains a dock and pick-up service at Kansas City; that, at the prior hearing, he did not maintain a dock at Richmond but, at the time of the later hearing, used the Firestone store at Richmond, where customers can contact Williams; that he has a solicitor at Excelsior Springs who solicits business at Richmond and Henrietta; that Orscheln also serves Henrietta but has no commission authority therefor.

Mr. Morrow, freight agent for Orscheln, testified to the effect that Orscheln operates 40 trucks, 69 tractors, and 97 trailers, and has 10 new tractors not yet in operation; that it maintains terminals at Kansas City and Richmond; that, since the December hearing, it operates one closed van in Richmond, which picks up and delivers freight and also goes to Kansas City each day, and has an agent who lives there and that this service had only been in operation since January, 1953; that, in addition, it operates two trailers daily between Kansas City and Richmond, with others available when needed; that a dock is leased at Richmond; that one trailer leaves Kansas City at 7:30 a.m., and arrives at Richmond at 9:30; that another trailer leaves Kansas City at 8:30 p.m., and arrives at Richmond at 10:30; that the freight from the latter truck is ready for delivery at 7:00 a.m., next day.

Orscheln records were produced. They tended to show that some witnesses who testified at the December hearing inadvertently gave the date of payment of bills by them as the date of delivery of freight which, if true, would indicate that service prior to the December hearing was not as bad as the evidence had indicated. There was also evidence to the effect that claims for lost or damaged freight had been handled more efficiently than the witnesses for applicant had indicated. If the evidence offered by protestants is accepted as true, it indicates that reasonable service, at the time the April hearing was had, was then being rendered to the public, similar in every respect to that which applicant proposed to render.

We assume that the Commission gave to all of the evidence heard, including that heard in April, the weight and credibility to which it was entitled. Such evidence was substantial, and it was sufficient to justify a finding by defendant that the community of Richmond, at the time the later hearing was held, was receiving reasonably satisfactory service. In any case we cannot say that the evidence was not credible or entitled to any weight. It was not controverted by applicant, although Orscheln's records were available in the hearing room; and witnesses from Richmond could have been produced on the question of the prompt handling of freight since institution of Orscheln's revamped service.

■ We believe that the overwhelming weight of the evidence at the first hearing indicated that the people of Richmond were receiving poor service and were entitled to receive much better service. And we believe that the evidence adduced at the second hearing indicated that Orscheln had made material betterments in its equipment and service since the first hearing, probably in an effort to defeat the application; yet, the Commission was justified in finding, on the *whole* record, as it did, "that there is a sufficient number of certificated carriers operating between Kansas City, North Kansas City, Henrietta and Richmond to handle the traffic; that they are rendering reasonably satisfactory service; and that the authorization of another carrier to serve over that same route is not necessary." Such a finding is not contrary to the overwhelming weight of the evidence.

. The judgment should, therefore, be reversed and the cause remanded with direc-

tions to enter judgment affirming the award of the Commission.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded with directions to enter judgment affirming the award of the Commission.

All concur.