MRS. ADA MUNTON, WIDOW OF CHARLES MUNTON, DECEASED, RESPONDENT, v. A. DRIEMEIER STORAGE & MOVING COMPANY (EMPLOYER), AND UTILITIES INDEMNITY EXCHANGE (INSURER), APPELLANTS.*—22 S. W. (2d) 61.

St. Louis Court of Appeals. Opinion filed January 7, 1930.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2613, p. 703, n. 75; Evidence, 22CJ, section 167, p. 199, n. 36; section 193, p. 221, n. 27; Trial, 38Cyc, p. 1395, n. 54; Workmen's Compensation Acts, —CJ, section 112, p. 115, n. 24; section 114, p. 116, n. 40.

*John J. Nangle* for appellants.

1126

*McNearney & Murphy, A. A. Alexander* and *Charles E. Morrow* for respondent.

BECKER, J.—This is an appeal from an award of the Missouri Workmen's Compensation Commission made in favor of Ada Munton, widow of Charles Munton, deceased. The award of the commission was affirmed by the Circuit Court of the City of St. Louis, and the employer and the insurer, in due course, bring this appeal.

Charles Munton was an employee of the A. Driemeier Storage & Moving Company, and both the employer and employee had accepted the Workmen's Compensation Law.

Charles Munton died August 11, 1927, leaving surviving him as his sole dependent his widow, Ada Munton. An application for compensation was duly filed, claiming that the said Charles Munton had been injured on July 28, 1927, while moving a piano in the course of his employment at a designated residence on 21st street in the city of St. Louis, Missouri. When this application came up for hearing, the claim for compensation was amended to include an additional accident alleged to have happened on July 30, 1927.

Inasmuch as appellants here urge that there is not sufficient competent evidence in the record to warrant the making of the award, we now set out the evidence adduced before the commission. Mrs. Munton testified that on July 28, when her husband returned home at the close of the day, he told her that he had hurt his neck while moving a piano near 21st street; that her husband continued working on however through the day of July 30, 1927, on which day, on his return from work, he told her that he had again hurt his neck while carrying a dresser downstairs.

As to the accident of July 28, Mrs. Munton testified that her husband stated that an accident occurred while he and other employees of the defendant were carrying a piano downstairs; that it had slipped and came down on the back of his neck. She further stated that she examined his neck and it looked to her as though it was swollen; and that on July 30, upon her husband returning from work, he complained of having met with another injury; that she rubbed his neck and noticed that it was swollen and red.

On July 3, Dr. Blake was called in to treat her husband, and a Dr. Steinfels also made an examination of Munton. On August 1, a Dr. Bechtold was called in and he was of the opinion that meningitis could be caused by some fracture of the spine. Munton got no better and within the next few days a Dr. Mountjoy was called in, and upon her advice Munton was taken to the City Hospital, where he died a week later.

X-ray pictures were taken at the hospital. They show a lateral view of the skull and spine, and Dr. Ruben N. Smith, the chief resident physician at the City Hospital, who was called in in consultation, testified that he found no indication of disease, but he testified further, however, that the X-ray pictures show a fracture of one-half of the ring of the first cervical vertebra with a very slight upward displacement of the posterior fragment, and that, according to the hospital record, Munton died of simple meningitis, which in his opinion could have been caused by a fracture of the vertebra.

Dr. Grace Mountjoy, one of the physicians who treated Munton, examined the radiographs and testified that they showed a fracture "at the first vertebra, right at the top of the spine, on which vertebra the skull rests," and she gave it as her opinion that meningitis could be caused by a fractured vertebra. Dr. Julius Bechtold, a chiropractor who attended Munton, testified to like effect.

It is admitted that the insurer, at Mrs. Munton's request, sent an adjuster to the hospital to see her and that they mailed her a check August 10, for $20. The letter in which the check was enclosed reads as follows:

"Dear Mrs. Munton:

"We are enclosing herewith our check in the amount of $20, covering the compensation due your husband for the period of August 1st to and including August 7th, on account of the injury he sustained.

"The enclosed form is the agreement that I told you about when I saw you at the hospital. Under this agreement we will pay you $20 a week during the period that your husband is unable to work. Have some one on whom you depend read this over to you and advise you as to just what is there. This must be signed by you or by your husband in order to keep the promises I made you yesterday.

"I hope that you have received encouraging reports from the doctor at the hospital and that you can now feel that your husband is on the road to recovery.

"Rest assured that we are taking care of your interests and are making no attempt to keep any benefits that our company has to offer from you."

The "enclosed form" referred to in the letter nowhere appears in the record before us, and Mrs. Munton testified that Mr. Thrasher, who represented the insurer and signed the letter in which the check was enclosed, told her that he would pay her $20 per week until Mr. Munton got better; that no further payment was in fact made as Munton died the day after the check was sent.

The following letter was introduced in evidence on behalf of claimant:

"Lyton T. Block & Company,
    "511 Locust Street,
        "St. Louis, Missouri.
"Gentlemen:

"Charles Munton, one of our employees, residing at 3933a N. 20th Street, failed to report for work at usual time of 7:00 A. M. on Monday, August 1, 1927. About 7:30 A. M. his wife, Mrs. Munton, telephoned our office and informed us that Mr. Munton became ill with severe headaches on Saturday night, July 30th, and it was necessary for her to summon a doctor. She further stated that doctor diagnosed case as being too much of the heat and also possible stomach disorders.

"On Tuesday afternoon, August 2, 1927, Mrs. Munton called personally at our office, and asked for our recommendation of a good physician, whom she could summon to attend Mr. Munton, as he had had no relief from his pain. We informed her that we were not in a position to know who to recommend, as we have had no experience with medical doctors during the past five years; all of our family treatments being received from a chiropractor. Mrs. Munton then stated that she had summoned a chiropractor, Dr. Bechtold, and he had informed her it would take time for his adjustments to re-act, and relief could be had.

"On Wednesday morning, August 3, 1927, an employee, Mr. H. H. Medley, stated to several other employees in our garage, that during a friendly visit on Tuesday evening Mr. Munton stated that the only cause that he could account for his pain in the head was: On Thursday morning, July 28, 1927, Mr. Munton helped carry a piano from the premises of 2624 North 21st street, and that in doing so strained his neck causing an ache therein. Mr. Munton paid no attention to same, as he believed (as in most cases), the pain was temporary and would wear off later in the day. On Wednesday afternoon, Mr. Gaterman, a foreman, reported into our office that he had made a friendly call on Mr. Munton, and Mr. Munton had stated to him the same facts that Mr. Medley had stated in our garage.

"On Friday morning, August 5, 1927, at the request of Mrs. Munton, Mr. Medley informed our office that Mr. Munton had been removed to the City Hospital for further examination; as attending physicians had informed Mrs. Munton there was a possible tumor on the brain, or a broken blood vessel in Mr. Munton's head. They also stated that Mr. Munton's kidneys and liver were in a very bad condition.

"Although we have never been notified by Mrs. or Mr. Munton that the illness was due to injuries while employed, we believed it best to enter a report so that same may be on file should further complications develop.

"Trusting you will give this your usual good attention, we are
"Very truly yours,
"A. DRIEMEIER STORAGE & MOVING COMPANY,
"(Signed) A. D. DRIEMEIER, JR."

As to Munton's record at the City Hospital, the keeper of the records testified that its history sets out that "the patient was moving a piano and slipped, hitting the back of his head." . . .

We note that the employer introduced in evidence the transcript of the coroner's inquest which contained, among other things, the hearsay testimony of Mrs. Munton as to what her husband had told her with reference to the alleged accident of July 28th.

Herbert H. Medley testified in detail to an occurrence of July 30, whilst working with Munton, carrying a dresser from one residence to another; that Munton while

"carrying on the bottom and with his head and shoulders against the dresser, going down some steps, and was lifting up to some extent, Munton's foot slipped and he took two steps at once, and the dresser came down on his neck. I tried to hold it back all I could but he pushed up against it and we went across the street and when we set the dresser down it twisted him and his neck in here . (indicating), and he said: 'I have quite a catch in my neck,' and he could not get his breath. He did not go home at this time, but we went on with the job and he complained after that about his neck and I asked him what the matter was and he said: 'I hurt it a few days ago carrying a piano.' . . . He expressed at that time that he was carrying the piano down the steps. He was in the yoke and when they were coming down they hit the post at the bottom of the steps and the piano slipped and came down on his neck and everything went black before him, and he moved the piano and thought no more about it. This occurrence, when the dresser hit his neck, was on July 30, and I did not witness the occurrence on July 28" . . .

Admittedly Munton, on July 28, in the course of his employment, had aided in carrying a piano weighing 800 to 900 pounds down a narrow stairway from the second floor of a residence to a moving van. One of the employer's own witnesses, who was a stockholder in the employer's company, testified that,

"this was a player piano. Mr. Munton was under the keyboard and Goetz was at the back and I was bracing it. Munton had a pad over his head and got up against the keyboard. There were about twenty-two or twenty-three steps and the ceiling was about ten or twelve feet high. The piano was on the same angle as the steps, and the man on top had hold of the keyboard. There is considerable weight on the three men at the bottom. I did not say that the piano got hung in any way coming down the steps, and we never had any trouble bringing it down."

T. O. McNearney, a witness for the employer, testified that he had gone to the house where the piano in question had been moved from and examined the stairway.

"They came down at an angle of about 45 degrees, and the width of the step from the wall to the newel post at the bottom was twenty-eight inches, and from the wall to the rail was thirty inches. I then went over to where the piano was moved to measure it and found it to be twenty-nine inches. While there I also found the newel post was jarred loose, and as it was a built-up newel post I asked the lady of the house about it, and she said it was done at the time they moved the piano. We looked on the piano and along the back of it; there were marks on it." . . .

A. H. Driemeier testified that he was president of the defendant employer company and that the first knowledge

"I had of this accident was when the boys were in the garage and some one said Munton had got hurt on 21st street on Wednesday morning, and no one in my office knew anything about it."

Appellants here urge that the competent evidence in the record falls short of meeting the burden of proof which is on claimant to prove, that the deceased's death was the result of injuries received in an accident arising out of and in the course of his employment, in order to entitle her to compensation; that the sole evidence tending to prove plaintiff's claim is hearsay and self-serving declarations which are no part of the *res gestae,* therefore incompetent, and standing alone will not support an award of compensation.

We readily concede that the burden is on the claimant to establish that the injury was the result of an accident arising out of and in the course of the employment, and in the instant case that the death resulted from the accident. Nor does it require any citation of authorities that hearsay and self-serving declarations, which are no part of the *res gestae,* are not competent, or that such statements alone will not support an award of compensation. A careful analysis of the record before us, however, has brought us to the conclusion that the instant case does not fall within that category. In this connection we note the rule that when hearsay evidence or self-serving declarations are offered, a proper objection must be made thereto, for if the evidence is admitted without objection, it is to be considered and given its natural probative effect as if it were in law admissible. [Diaz v. U. S., 223 U. S. 442.]

"The initiative in excluding improper evidence," says 1 Wigmore on Evidence (2 Ed.), sec. 18, p. 173, "is left entirely to the opponent,—so far at least as concerns his right to appeal on that ground to another tribunal. The judge may, of his own motion, deal with offered evidence; but for all subsequent purposes it must appear that the opponent invoked some rule of evidence. A rule of evidence not invoked is waived."

See also Sawyer v. French (Mo.), 233 S. W. 126, loc. cit. 129; Flint v. Sebastian (Mo.), 300 S. W. 798, loc. cit. 806; Thayer v. Glynn, 93 Vermont 257.

We find a case arising under the Workmen's Compensation Act in Pennsylvania directly in point, namely, Poluski v. Glen Alden Coal Co., 133 Atl. Rep. 819. There the deceased, an employee of the defendant company, was injured on January 4, and died March 14. The Workmen's Compensation Board awarded compensation, which was affirmed by the circuit court, and on appeal to the Supreme Court the company challenged the award on the ground that there was no competent evidence to sustain the finding of a compensable injury.

The claim rested upon hearsay evidence. In the course of the opinion, referring to the hearsay evidence, this court said:

"There is nothing in the evidence thus quoted or in the statements later made to his wife and son that would bring them within the *res gestae* rule. . . . The finding of an injury in the course of employment is here sustained, not on the theory that the statements as to the accident and its cause were in fact part of the *res gestae* (Smith v. Philadelphia & Reading Coal & Iron Co., 130 A. 265, 284 Pa. 35; Riley v. Carnegie Steel Co., 119 A. 832, 276 Pa. 82), but because the evidence was admitted without objection as proof of these substantive facts. Under this state of the record, they must be treated as though counsel deemed them part of the *res gestae,* or, if not, then that they were of sufficient probative value for the purpose intended; that is, to show a compensable case. Where evidence, incompetent as hearsay, is admitted without objection and is relevant and material to the fact in issue, the court may give it the value of direct evidence, and on it base a finding of fact; or it may be treated, by what may be taken as consent, as part of the *res gestae* in determining the issue."

When we examine the record before us we find that after Mrs. Munton had testified that her husband had received an injury and that he came home and told her that he had struck his neck, counsel for the employer and insurer "noted an exception," on the ground that "that is a self-serving statement and hearsay testimony." No request, however, was made to have the answer stricken out. And a little later on, after Mrs. Munton had testified, "when he came home on Saturday he said he had hurt his neck again while bringing a dresser down stairs," counsel for appellants asked that that answer be stricken out as being "a self-serving statement."

The record discloses that at this stage of the proceeding the commissioner informed the attorney for the employer and insurer that the commission did not approve of objections being made by counsel. This ruling of the commissioner, however, did not prevent the attorney for appellants from making objection later on during the course of this witness' testimony.

Irrespective of the question whether noting an exception to the first statement of Mrs. Munton to the effect that her husband came home and told her he had struck his neck, on the ground that it was a self-serving statement and hearsay, may be viewed as sufficient to save the point for review here on appeal, the appellants themselves introduced hearsay testimony with reference to Munton's alleged accident, sufficient, in our view, to supply the necessary evidence to support the commission's award.

The employer and insurer introduced in evidence a certified copy of the testimony taken before the coroner, which contained the hear-

say evidence given by the claimant that her husband had told her that he injured his neck moving a piano on 21st street near St. Louis avenue, and that "one fellow raised the piano and hit his neck." The transcript of the evidence before the coroner also contained a police report, which contained statements to the effect that Munton had stated that he was injured while moving a piano. So too, the records of the City Hospital were included and, among other things, con- tained the statement: "Patient admitted to hospital with history of moving piano and slipped, hitting back of head." Furthermore, Herbert H. Medley, a witness introduced in behalf of the employee, was permitted to testify without objection, that Munton told him he had hurt his neck a few days before carrying a piano.

It follows from what we have said above that the award of the commission, and the judgment of the circuit court affirming it, should be affirmed. It is so ordered.

*Haid, P. J.,* and *Nipper, J.,* concur.