MARTHA TRALLE, RESPONDENT, v. CHEVROLET MOTOR COMPANY, APPELLANT.—92 S. W. (2d) 966.

Kansas City Court of Appeals.   April 6, 1936.

*James E. Burke* and *Madden, Freeman & Madden* for respondent.

*Miller, Gumbiner & Sheffrey, R. C. Van Valkenburgh* and *Julius C. Shapiro* for appellant.

REYNOLDS, J.—This is an appeal from the final judgment of the Circuit Court of Jackson County affirming an award of the Workmen's Compensation Commission.

On January 17, 1934, the respondent, Mrs. Martha Tralle, as claimant, filed before the Workmen's Compensation Commission her claim as the widow and dependent of Edmound H. Tralle, her deceased husband, an employee of the Chevrolet Motor Company, for compensation on account of accidental injuries alleged to have been sustained by the said Edmound H. Tralle on September 29, 1933, arising out of and in the course of his employment with said motor company, from which he died on October 24, 1933.

It was alleged in said claim that the deceased Edmound H. Tralle was run over by a truck being operated by another employee of the defendant company, causing injury to his leg, foot, and ankle.

On February 2, 1934, the defendant company, as employer and also as self-insurer, filed its answer to said complaint in which it admitted that the deceased employee, Edmound H. Tralle, and it, as his employer, were operating under and were subject to the Missouri Compensation Act at the time as to the matters contained in said

answer and that it was a self-insurer and in which it further specifically denied that the deceased Edmound H. Tralle sustained an accident resulting in personal injury and death arising out of and in the course of his employment within the purview of and as provided by the Missouri Compensation Act.

The claim was heard on April 11, 1934, before the Honorable Orin H. Shaw, a member of the commission. Upon such hearing, the evidence offered by claimant in support of her claim as well as that offered by the defendant company in opposition thereto was received and duly preserved by the commissioner. Thereafter, on April 30, 1934, the said commissioner made report on said hearing, accompanied by his findings of fact on the evidence, awarding no compensation for the accident and denying compensation therefor.

Thereafter, claimant filed an application for review, together with an application for leave to introduce additional evidence before the entire commission, which was by the commission sustained; and the claim was set for hearing for review for the purpose of hearing additional testimony offered on Thursday, June 21, 1934, and on said date the Honorable JAY J. JAMES, a member of the commission acting for the commission, heard the additional evidence offered and caused it to be transcribed and submitted before the full commission.

On January 19, 1935, the commission made final award, accompanied by its findings of fact and rulings of law, in favor of the claimant, reversing its former award and allowing her compensation (the Honorable ORIN H. SHAW dissenting), which final award is in part as follows:

"The above parties having submitted their disagreement or claim for compensation for the death of the above employee to the undersigned member—of the Missouri Workmen's Compensation Commission, and after hearing the parties at issue, their representatives, witnesses and evidence, the undersigned hereby find and award—compensation for said accident in favor of the following dependents of said employee and against the said employer and insurer as provided in the Missouri Workmen's Compensation Law, as follows:

"For Burial Expenses the sum of $150.00
"For Death Benefits:
                    "To Martha Tralle the sum of $10.03 per
                    week for 300 weeks.*
                    "* or until prior death or remarriage and
                    then to Virginia Tralle, daughter.

"Given at the City of Jefferson, State of Missouri, this 19th day of January, 1935.

538

"JAY J. JAMES,
"Member, Missouri Workmen's Compensation Commission.
"EDGAR C. NELSON,
"Member, Missouri Workmen's Compensation Commission.
"ORIN H. SHAW,
"Dissenting Member, Missouri Compensation Commission."

Accompanying said award was the findings of fact made by the commission, together with the conclusions of law based thereon upon which said award was based, which is, in substance, as follows: The accident was on September 29, 1933, at Leeds, Missouri. Employee Edmound H. Tralle (deceased) was in the employ of the Chevrolet Motor Company at the time of the accident. Both employer and employee at the time of the accident had elected to accept the law. The claim for compensation was timely filed. All of employer's compensation liability for accident was insured by insurer. The employee was engaged in trucking batteries; and the truck ran over his foot and leg, cutting and spraining his right ankle. The accident caused death, which occurred October 24, 1933. The employee's dependents, including those who would be dependents should the widow die or remarry, were listed as Martha Tralle, wife of the employee, dependency total, Virginia Tralle, daughter of employee, dependency total.

It further found that the employee's death on October 24, 1933, was the result of an aggravation of his diabetic condition by the accident of September 29, 1933. As a conclusion of law upon the facts found, it held that the dependents are entitled to compensation as set out.

Thereafter, under the certificate of the commission, an appeal by the defendant company from said award allowing compensation was duly lodged in the Circuit Court of Jackson County by the return to said court by the commission of all documents and papers on file in the cause, together with a transcript of the evidence and the award, the orders and the decisions by it made thereon.

Thereafter, on July 13, 1935, upon hearing had on said appeal, the Circuit Court of Jackson County affirmed the award appealed from and entered judgment accordingly. This appeal is prosecuted from such judgment.

On November 25, 1933, the defendant company as employer and self-insurer filed with the Workmen's Compensation Commission its report of the accident, in which it stated that the employee "Slipped while trucking some batteries, truck running over his foot and leg, cutting and spraining his right ankle" and in which it described the injury received by the employee as a "cut, sprained and lacerated

right ankle." It further appears from the said report that, in answer to the question therein, "Is accident under the Law?" the defendant company stated, "Yes." It further appears from said report that the employee was in the service of the defendant company on September 29, 1933, at the time the accident occurred. This report was introduced in evidence at the time of the first hearing before Commissioner SHAW. This report appears to have been made by the personal director of the defendant company, and there is no contention made that he was without authority to prepare and file the report. At the time of the first hearing before Commissioner SHAW, the record shows that the following took place:

"COMMISSIONER SHAW: Let the record show $15.05 is the employee's average weekly wage. Is there any question about this employee receiving an accident arising out of the course of his employment?

"MR. SHAPIRO (Counsel for employer) : Judge, there may be some question about that, although he received a sprained ankle, or at least there is some question about proof on the matter. We don't know anyone that saw the alleged accident.

MR. BURKE: There is no question about it. You have it on your report.

"Mr. SHAPIRO: He received a sprained ankle, but the evidence will be here as to the condition of the foot, however, he received it."

It sufficiently appears from the employer's report of accident and other admissions of record and from the evidence introduced at the hearings before the commission that Mr. Tralle, at the time of his death, was an employee of the Chevrolet Motor Company at its assembly plant in Kansas City, Missouri, and, on September 29, 1933, sustained an accidental injury to his right foot and ankle and to the upper part of his right leg. It is admitted by counsel for the defendant company, at the time of the hearing, that Mr. Tralle received an accidental injury on the date in question although the evidence of the injury was disputed. It was further shown by the evidence in the record, upon the hearing before the commission, that, on the morning of September 29, 1933, at the time Mr. Tralle went to work, he was not suffering from injury of any kind; that, on the evening of September 29, when he returned home, he was limping and had a marked appearance of pain in his right foot; that he had a cut on his right foot and ankle which went to the bone, to which cut some of his stocking was adhering. The wound was bleeding and began to swell. Throughout that evening and night, he complained of pain shooting through his leg. The next day, he returned to work but was unable to complete a full day's work. From September 30, 1933, until his death on October 24, 1933, he never returned to work. The record does not show that any one actually saw Mr. Tralle at the time

that he was injured or saw the accident in question. It shows, however, that, immediately prior to his injury, Mr. Tralle was loading a small truck on the dock of the defendant company; that, immediately after his injury, Mr. Tralle reported to Mr. Walter R. Brownhill, the stock room foreman, that he had "sprained his ankle" and Mr. Brownhill examined the injured leg and found an abrasion "Just where the truck had rubbed against his leg." The statement thus made by Mr. Brownhill—that Mr. Tralle had reported to him that he had "sprained his ankle"—was brought out by counsel for the defendant company as a part of the direct examination of Mr. Brownhill as a witness for the defendant company. Mr. Brownhill further testified that, when Mr. Tralle returned to work the day after the accident, he was limping. From a number of witnesses, it was shown that the cut on Mr. Tralle's ankle was from one and one-half to two and one-half inches long and went to the bone. It is further disclosed by the evidence that this cut became infected and swollen and filled with pus and, for a while, was red but later changed to a blackish-green color.

At the time of the accident in question, the deceased Tralle was afflicted with diabetes and had been for a number of years, which was and had been kept under control by a special diet prescribed and regularly administered under the care of his regular physician and by shots of insulin hypodermically administered every day under the direction of a physician, to which his condition readily responded so that he was not disabled and rendered incapable of steady and heavy physical labor on account thereof. The record fails to disclose any other infirmity in the physical makeup of the deceased Tralle or weakness affecting the condition of his health or strength. Following the accident, he was totally disabled until the time of his death, except for an attempt to return to work on the day following the accident. He was under the care of physicians, first under the care of Dr. Herwig furnished by the defendant company and later under the care of his family physician Dr. Duncan and one Dr. Johnson. The wound on the leg of the deceased became infected. When Drs. Duncan and Johnson were called in some three or four days prior to his death, they found the deceased in a groggy, sleepy condition, or state of diabetic coma, with evidence of infection in his wound on his right ankle and leg, which were swollen, from which wound redness extended about one-third of the way up the leg. By reason of the infection from the wound, it was found that the diabetic condition no longer responded to the insulin or diet treatment to which it had formerly responded or to other treatment, so that it was not possible to re-establish the balance of the sugar condition in the blood of the deceased by reason of the infection in the wound or to maintain longer control of his diabetic condition.

The evidence on the part of Dr. Duncan was that the injury received by the deceased with the infection resulting therefrom was a contributing cause of his death, and the evidence on the part of Dr. Johnson was to the effect that it was a direct contributing cause of his death.

### Opinion.

1. The defendant company contends that the finding of fact by the commission as to the manner in which the accident happened was contrary to the manner charged in the complaint and therefore was insufficient to support the award—that the commission found that the deceased was trucking some batteries and that the truck ran over his foot and leg, cutting and spraining his ankle, while the complaint charged that the deceased employee was run over by a truck being operated by another employee.

It is true that the manner in which the accident happened as found by the commission is different in the particular noted from that charged in the complaint, but that such is true is inconsequent. The manner in which the accident happened (that is, whether it happened by a truck being operated by the deceased or by one being operated by some other employee running over the deceased employee's foot) is immaterial. Such fact is evidentiary in character only and is not of such character as that required upon which the commission may pronounce a conclusion of law or upon which it may base its final award.

The final findings of fact upon which a conclusion of law may be pronounced and an award based is one embodying the ultimate constituent facts involved, from which mere evidentiary facts are to be excluded. [Leilich v. Chevrolet Motor Company, 328 Mo. 112, 40 S. W. (2d) 601.]

The commission in its findings of fact found the ultimate facts required to be found by the Compensation Act in order to justify an award of compensation under the act. Among the facts found were those of employment; of operation under the Compensation Act; of an accident on September 29, 1933, arising in the course of employment in which the employee was injured while trucking some batteries when the truck ran over his foot and leg, cutting and spraining his right ankle, from which injury he, on October 24, 1933, died; and of such death being the result of an aggravation by the accident of the deceased employee's diabetic condition.

It is immaterial whether, at the time of the accident, the truck was being operated by the deceased employee or by some other employee. The material question involved under the provisions of the Compensation Act is ''Did the employee sustain accidental injury in the course of his employment by a truck running over his foot and leg, cutting and spraining his ankle, from which accidental injury he afterward died?'' The compensation commission found that he did. It

is immaterial that the manner in which the accident happened was not clearly charged in the complaint as found by the commission. The complaint did charge an accident in the course of the deceased employee's employment, by a truck running over his foot and causing injury to the employee from which he afterward died. The complaint was entirely sufficient to support the findings as made by the commission and the award of the commission entered thereon.

2. With the defendant company's further contention that there is no competent evidence in the record that the deceased suffered the injuries complained of at the Chevrolet Motor Company or that he was trucking batteries or that the truck ran over his foot and leg, cutting and spraining his ankle, and that there is no evidence of any causal connection between his alleged injury or accident and his death or prior diseased condition from which he died, we are likewise unable to agree. It will be noticed that the defendant company does not complain that there is no evidence in the record of such facts but only that there is no competent evidence of such facts in the record and does insist that it becomes the duty of this court to pass on the competency of the evidence in the record relied upon to establish such facts. That it is our duty to determine the competency and sufficiency of the evidence to establish the necessary ultimate facts relied upon, we think there is no doubt. However, we are unable to agree with the defendant company in its contention that there is no competent evidence in the record to support the finding of the commission. Upon the other hand, we are of the opinion that there is ample competent evidence for its support. Under the provisions of section 3332, Revised Statutes of 1929, it becomes the duty of the employer, after knowledge of an accident resulting in personal injury to an employee, to notify the Workmen's Compensation Commission and to file a full and complete report with the commission of the injury or death for which the employer would be liable to furnish medical aid or render compensation. Such report, when filed with the commission, constitutes a solemn admission of record upon the part of the employer of the facts stated therein.

In this case, from the report of accident filed by the defendant company with the commission, it fully appears that the deceased Tralle was in the employ of the defendant employer and, while in such employment, he was accidentally injured, in the course thereof, by his slipping while trucking some batteries and by the truck's running over his foot and leg, cutting and spraining his right ankle and that such accident was under the Workmen's Compensation Act.

3. It is insisted by the defendant company that a casual reading of the report filed by it with the commission discloses that it is based throughout on alleged conversations between the deceased and one Roy R. Williams, who made the report for the defendant company

and who later testified that the description of occurrences contained in such report was simply "what the man claimed himself" (referring to the deceased Tralle) and that he did not himself see the accident; that such report contains no recital of competent facts; that such testimony as it affords is hearsay and clearly incompetent and inadmissible and should not be permitted to form the basis upon which to predicate the award. If such be true—that such testimony as the report afforded is hearsay—then objection thereto is not now open to the defendant. The report of the matters and facts contained therein is required by the statute to be made. Such report and all of the matters and facts written therein when filed became a record in the case, which record is analogous to a pleading and is admissible and binding in the same way as a pleading as to admissions therein against interest and is admissible in evidence in the same manner as a pleading. [Lampkins v. Copper-Clad Range Corporation (Mo. App.), 42 S. W. (2d) 941; Lumpkin v. Sheidley Realty Co., 227 Mo. App. 306, 53 S. W. (2d) 386.] The report was never sought in any manner to be amended by the defendant company, nor was its truthfulness or accuracy ever questioned by it. Neither was it objected to by defendant company as hearsay and incompetent when offered in evidence. It is now, in any event, too late to do so.

The report did contain a recital of competent facts. It is immaterial that such recital was furnished defendant company by the deceased or injured party. The defendant company adopted the same as its own and embodied such recital in its report, unaccompanied by any explanation whatever. Such recital was thus made by the defendant company as of its own knowledge.

4. In addition to the statements and admissions contained in the report of the accident, there was evidence tending to show that, at the time that the deceased Tralle went to work on September 29, 1933, he was not suffering from any disabling physical injury; that, on the evening of that day, when he returned home from work, he was limping and had a marked appearance of pain in his right foot and leg; that, at that time, he had a cut on his right foot and leg reaching in depth to the bone, about one and one-half inches in length, which was bleeding, to which cut a part of his clothing was adhering. It was testified by Mr. Walter R. Brownhill, one of Mr. Tralle's co-employees and his immediate foreman, that, prior to the time that Mr. Tralle was injured, he was loading batteries out of a freight car into a truck and pushing the truck into the warehouse; that Mr. Tralle came to him subsequent to his injury and told him that he had sprained his ankle; that Mr. Tralle took off his shoe and he observed that the ankle was slightly swollen; that Mr. Tralle got some bandages out of his car and put them about his ankle; that the only

injury he noticed was that the ankle was sprained; and that there was an abrasion where the truck had rubbed against his leg.

5. It is suggested by the defendant company that the testimony of Mr. Brownhill was hearsay and incompetent to establish the facts alleged. The only testimony of Mr. Brownhill open to the charge that it was hearsay is his statement that the deceased employee came to him soon after the accident and told him that his ankle was sprained. This statement appears to have been elicited from Mr. Brownhill by the defendant company's counsel on the hearing. The defendant company therefore cannot now complain that it is to be regarded as hearsay only and treated as incompetent. When testimony which is objectionable as hearsay is elicited by a party, that it is hearsay is waived by the party so eliciting it. To such other statements that Mr. Brownhill may have testified to and that may have been brought out by claimant, there was no objection made at the time by the defendant company on the ground that they were hearsay. Under the circumstances, it is not now open to the defendant company to claim that such testimony should not be considered because hearsay, if hearsay it was.

6. When hearsay evidence or self-serving declarations are offered, proper objection must be made thereto; and, if the evidence is admitted without objection, it is to be considered and given its natural probative effect, the same as if it were in law admissible. [Diaz v. U. S., 223 U. S. 442, 32 Sup. Ct. 250, Ann. Cas. 1913C 1138; Munton v. A. Driemeier Storage & Moving Co., 223 Mo. App. 1124, 22 S. W. (2d) 61.]

The initiative in excluding improper evidence is left entirely to the opponent, so far at least as concerns his right to appeal on that ground to another tribunal. The judge may, of his own motion, deal with offered evidence; but, for all subsequent purposes, it must appear that the opponent invoked some rule of evidence. A rule of evidence that is not invoked is waived. [1 Wigmore on Evidence (2 Ed.), sec. 18, p. 173.]

7. Moreover, it is not necessary that proof be made by direct evidence of an injury by accident to an employee arising out of his employment—that is, proof by eye witnesses who saw the accident when it happened—; but it may be established by circumstantial evidence, as likewise may the place be shown where it happened. [Zimmerman v. Goodfellow Lumber Co. (Mo. App.), 56 S. W. (2d) 608.]

The circumstances shown in the evidence in this case permit of a fair inference therefrom that the deceased Tralle received his injuries from an accident while pursuing his employment at the defendant company's place of business. The evidence shows that, aside from his diabetes, there was nothing of a physical nature wrong with him when he went to his work on the morning of September 29, 1933,

and that he was not, at such time, suffering from injury of any kind or character; that, prior to his injuries, he was noticed by Mr. Brownhill, his foreman, engaged in his work of loading batteries on a truck; that, shortly after having been so noticed, the deceased came to him and complained of his ankle and Mr. Brownhill noticed, at that time, that his ankle was sprained and injured and that there was an abrasion on his leg "Just where the truck had rubbed against his leg;" that, when he returned home that evening, Mr. Tralle was limping and had a marked appearance of pain in his right leg and foot; that he had a cut on his right leg and ankle, about one and one-half inches in length, which went to the bone, to which cut some of his stocking adhered; that the wound was bleeding and swelling; that he complained of pain shooting through his leg; and that he returned to work the next day but was unable to complete a full day's work and was never able thereafter to do any work. He was not shown, on the date of his injury, to have been engaged in any other work or services then that of loading the batteries on the truck in the course of his employment with the defendant company at the defendant company's place of business.

We think such facts are amply sufficient to support a finding by the commission that he was accidentially injured in the course of his employment at the defendant company's place of business.

8. It is also contended by the defendant company that no causal connection is shown between the deceased's injury and his death. We are unable to agree with such contention. There is evidence in the record tending to show that the injury received by deceased directly contributed to his death. The evidence in the record tends to show that, at the time of his injury, the deceased was afflicted with diabetes, which was and had been kept under control for a period of five years and over by a special diet prescribed by his physician and also by shots of insulin hypodermically administered every day under the direction of his physician. The wound received in his leg became infected and pus gathered therein, which was from time to time drained therefrom; and the wound appeared to turn a blackish-green color. The diabetic control which had always been maintained by the use of insulin became disturbed; and, because of the presence of the infection, it became impossible to re-establish that control; and, as a consequence, the diabetic condition became aggravated. Dr. Johnson, when called, found Mr. Tralle in a diabetic coma or in a groggy, sleepy condition, with evidence of infection in the lacerated wound on his leg. There was some redness present and also some swelling, the redness extending about one-third of the way up Mr. Tralle's leg. Dr. Duncan's examination of the leg revealed practically the same findings. Dr. Duncan testified that, in his opinion, Mr. Tralle would not have been in a diabetic coma except for the infection. Both

of these doctors made strenuous efforts to re-establish the "balance" in the sugar content of Mr. Tralle's blood but were unable to do so because of the presence of the infection. Each of these doctors testified that the injury which Mr. Tralle received and the infection resulting therefrom directly contributed to his death.

Dr. Duncan testified as follows:

"Q. Doctor, why were you unable to stabilize his condition? A. Because we weren't getting anywhere we figured that infection in his leg had something to do with the fact that we couldn't get our insulin to act, and also we know that tolerance for carbohydrates would be reduced under such circumstances, and that is the only thing we considered with the case at that time."

Later, when Dr. Duncan was questioned about the exact cause of death, the following answers and question appear from the record:

"THE WITNESS: Of course, the man died of acidosis due to diabetes, but in the face of an infection, in the presence of infection, I should say, the infection was a contributory cause of his death. . . .

"Q. Doctor, state whether or not that condition, the injury which you have assumed in that question, was a direct contributing factor to his death. A. The infection was in my opinion a contributory factor to his death."

On the same issue, Dr. Johnson testified as follows:

"Q. Doctor, in your opinion, was this injury which you observed to his foot a contributing cause to the diabetic coma and to his subsequent death on October 24, 1933? A. Yes, sir, I think it would be.

"Q. Is it your opinion that it was a direct contributing cause to his coma and subsequent death? A. I would say it was."

9. We are not impressed with the defendant company's contention that, although the evidence may show that the accidental injury contributed to the death, such showing was not evidence upon which an award might be predicated that it did in fact cause the death. If it was a contributing factor to the death, it must have been, in so far as it contributed thereto, the cause of his death, notwithstanding there may have been other contributing factors thereto or causes thereof. We are not concerned with evidence to the effect that his death was attributable to other causes or that his death might have come about without the accidental injury aggravating his condition and contributing thereto. The only question with which we are here concerned is whether or not there was sufficient competent evidence in the record to justify the finding of the commission that his death was directly contributed to by his accidental injury while in the course of his employment. That there is, we have no doubt.

The fact that the deceased was afflicted with diabetes and that it also contributed to his death does not bar his dependents' right to compensation, even though without the diabetes the injury sustained

from the accident would not have caused his death. [Harder v. Thrift Construction Co. (Mo. App.), 53 S. W. (2d) 34.]

In the case last cited, the court said at page 37 of 53 S. W. (2d):

"Finally we come to the point of whether there is a liability for compensation in this type of case, that is, where the injury has aggravated or precipitated a pre-existing condition or tendency without which the ultimate effects of the injury would have been slight or trivial, or at least not so serious. Bearing in mind the humanitarian purpose of the act and the liberal construction to be given its provisions, we think the answer must obviously be in the affirmative.

"In the enactment of our Compensation Act the Legislature has seen fit to prescribe no standard of physical fitness to which an employee must conform, and his right to compensation does not have its basis in any implied warranty of perfect health or freedom from latent and dormant tendencies to disease which may develop into positive and known conditions if incited and stimulated to activity by any accidental cause arising out of and in the course of his employment. In other words, the act is designed to afford its protection to the weak as well as to the strong employee; and in the practical application of the act, the disability or death for which compensation is to be given may just as legitimately be attributed to the accidental injury where undeveloped and latent physical conditions are set in motion and accelerated so as to produce such final result, as where the same result follows directly from visible violence done to the physical structure of the body.

". . . Generally speaking, the rule is that the act contemplates latent or dormant ailments; that the existence of a disease which does not impair the employee's ability to work will not prevent a recovery if the accidental injury accelerates or aggravates such disease to a degree of disability or of death; and that an actual aggravation of an existing infirmity caused by accident arising out of and in the course of the employment is compensable, even through the particular accident would have produced no such result in the case of a normal and healthy individual."

We are of the opinion that the award of the Workmen's Compensation Commission is supported by the facts in the record and that the judgment of the circuit court in affirming such award upon review is amply justified. The judgment of the circuit court affirming the award of the compensation commission is affirmed. All concur.