**Roy W. SUBLETT, Appellant,**

v.

**CITY OF COLUMBIA and Liberty Mutual Insurance Company, Respondents.**

**No. WD 34123.**

Missouri Court of Appeals,
Western District.

April 12, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1983.

Application to Transfer Denied
June 30, 1983.

Robert J. Dierkes, Columbia, for appellant; Bear, Hines & Thomas, Columbia, of counsel.

Geoffrey T. Farrow, St. Louis, for respondents; Riethmann & Soebbing, St. Louis, of counsel.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

PRITCHARD, Presiding Judge.

Appellant claimed worker's compensation benefits resulting from alleged injury which occurred during an altercation between him and one Burr (since deceased), in which appellant alleged that the accident was the result of an assault committed upon him during the course of his employment. An administrative law judge denied the claim, but the Industrial Commission found the injury to be compensable and awarded appellant $8,312. The trial court reversed the Industrial Commission upon this judgment entry: "Court finds that the facts found by the Commission do not support the award made; that there was not sufficient evidence in the record to warrant the making of the award; the Commission went outside the record to consider as evidence and to give probative value to a 'Report of Injury' which was never offered or received as an exhibit."

The review by this court is confined to a consideration of all reasonable inferences favorable to claimant which the Industrial Commission was entitled to draw from the evidence, and to determine if in fact the testimony was somewhat contradictory so that the question of credibility was presented for determination by the Commission. In this regard, the findings of the administrative law judge are not binding on the Commission if, upon consideration of all the evidence, it reaches a conclusion different from that found by the administrative law judge. *Govreau v. Farmington Transfer Company*, 473 S.W.2d 750, 751[1–3] (Mo. App.1971); *Petrovich v. Orscheln Bros. Truck Lines, Inc.*, 607 S.W.2d 832, 833[2, 3] (Mo.App.1980).

Appellant had been a maintenance foreman in the turbine room of the Columbia, Missouri, power plant since 1967. On the day of the accident, he had worked there for 26 years, and was age 53. Raymond Burr was an oiler in the engine room of the power plant, having worked there for 17 years, and was 39 years old.

Appellant was preparing to leave work early, about 2:00 p.m., on October 17, 1978, for a doctor's appointment. He changed clothes in a bathroom, then went toward a time clock where Burr was pacing back and forth. Burr said to him, "I'm getting tired of you reporting me to the supervisors and I'm just gonna take you out them doors and I'm gonna—we're gonna settle this thing." It appears that appellant had reported Burr to supervisors at various times. Burr then invited appellant out to the parking lot and appellant tried to talk him out of his anger, but Burr said, "I'm gonna knock your m_ _ _ _ _ f_ _ _ _ _ head clear off your shoulders", and "You are nothing but a goddamn, no-good m_ _ _ _ _—f_ _ _ _ _ coward." Appellant was standing at the north side of an open metal, north gate within the plant, and appellant testified further: "THE WITNESS: That's where he went into that fury again about calling me a no-good coward, an m-f-coward. And as he whirled, as he done this, I don't know—BY MR. HINES: Q What did he do? A He come at me, he charged at me, pushing and, well, he

hit me and I just, more or less, slipped and went back into that gate that was open there, at the iron gate. Then he—which I was down, about half-way down on, uh, at the time I hit the gate. If it hadn't been for the gate, I guess I would have went to the floor, but the gate stopped me. Q Where did you hit—What part of your body hit the gate? A My left shoulder hit that gate. Q And then did you go clear to the floor? A No, sir, I didn't go clear to the floor. I went about half-way down, and then I jumped—I kind of got back up and just by the time I had got back up he had run up against me with his belly and bellied up to me and grabbed my arm and throwed it behind the gate." When Burr shoved him into the gate and he hit on his left shoulder, appellant felt pain, he heard something pop, and his left arm went limp. After Burr threw his left arm behind the gate, appellant hit him in the stomach area with his right hand and knocked him back about seven feet. Appellant then walked over to Burr, who was getting up, and being afraid he would come at him again, he floored him again with his right hand. Burr started to get up again and appellant grabbed him by the hair and "knee lifted" him by putting his knee in his face and put him back on the floor. Appellant denied on cross-examination that he told Officer Ford that he struck Burr when he called him a coward.

When appellant saw Dr. Payne he told him that in going around a corner at work, he slipped and rammed his shoulder into an iron gate, but he did not mention anything about being involved in a fight, as he admitted at the hearing.

Donald Elderbrook was an employee at the Columbia power plant as operations supervisor. He saw, by the use of an inside security camera, Burr and appellant outside the plant in the parking lot on the west side of the building. The two came back in through the west entrance, and Elderbrook could then see them inside, being about three feet away from them. They were having a kind of argument, and appellant started toward the locker room, then turned around and came back because Burr was still talking, saying, "I am not a coward." He says, "If anybody is, you are." A few more words were exchanged and claimant said that there was no way "that he was going to call him a coward." At that time appellant took a swing which kind of glanced off of Burr, and he pushed Burr sideways. "I wouldn't say he was swinging—whether he was swinging or pushing—but he pushed Mr. Burr sideways." Elderbrook then had his back to them in calling the plant manager on the intercom, but turned back and saw Burr coming toward him trying to get to the outside door. Appellant then grabbed him again and threw him down, and one Tafton and Elderbrook stepped in to stop it, "but it looked like it was over anyway." Elderbrook testified further: "THE COURT: And it is your testimony that Mr. Sublett struck the first blow? THE WITNESS: That's the way I saw it. THE COURT: Where did he strike him? THE WITNESS: It looked to me like on the shoulder. That's why I say it looked more like a push than a blow. More like a shove. THE COURT: You saw nothing after that? THE WITNESS: No, sir." During the course of the entire incident, Elderbrook did not see Burr strike appellant at all. It was common knowledge down at the plant that there was bad blood between the two men.

James William Brown was standing in the hallway and observed the two men talking and both were hitting their fists together. Brown started to go outside, and then saw appellant swing and hit Burr in the shoulder and Burr took off and tried to get away but appellant was right behind him and pulled him to the floor and hit him a couple of times. Burr never did hit appellant. Burr got up and told appellant to stop it, and tried to get away but appellant followed him from behind and threw him down, and as Burr was getting up, appellant kneed him in the chest. Burr tried to get outside, but appellant pulled him down again, and Burr hit his head on the register. Brown then left.

Police officer James P. Ford interviewed appellant at his home in October, 1978. He

testified that appellant told him he invited Burr outside the plant and exchanged a few more words, and thinking the matter was settled, he started back in, and Burr called him a coward and some other names. Appellant stated that he became mad and struck Burr and they had a physical fight at that time. Appellant said he threw the first blow in the altercation, and did not indicate that Burr had pushed him prior to that time, but there was a shoving match and Burr shoved appellant into some kind of fence and who stated his shoulder got hurt. Appellant could not recall telling officer Ford that he struck the first blow, and "A I told him in the same vicinity and the same thing that was said in the report. I just told him that Mr. Burr had shoved me and then I had hit him, just like I had always said."

It is quite apparent that there are conflicts and contradictions in the testimony and evidence above recounted. The crucial issue here is whether appellant was the aggressor in the altercation with Burr at the power plant. Although there was evidence that Burr was not the aggressor, and appellant struck the first blow, appellant's own testimony contradicts that in that it was that Burr pushed him into the iron gate and thus caused the injury to his shoulder. Appellant's further testimony is that the ensuing fight, and his striking or "kneeing" Burr, was done to prevent further attack from Burr. The issue is one of credibility, and the cases say that the issue is one for the Industrial Commission to solve. *Govreau and Petrovich* cases, supra; and see also *Faries v. ACF Industries, Inc.*, 531 S.W.2d 93, 99 (Mo.App.1975), holding, "Under this latter section [§ 287.480, RSMo 1969], Missouri courts have recognized the validity of a Commission award of compensation where the referee had previously denied all compensation, (citing cases)." [Brackets added.] And note *Douglas v. St. Joseph Lead Co.*, 231 S.W.2d 258, 261, et seq. (Mo.App.1950), pointing out that referees, now administrative law judges, are merely servants and agents of the Commission, whom, as initial triers of the facts and as observers of witnesses, deference need

not as a *must* be deferred to, as the reviewing tribunal (Commission) own proper function is that of reaching its own conclusions on the whole evidence.

Respondents say that the Commission improperly substantiated appellant's version of the events by the City's report of injury filed by it, but not received in evidence. By § 287.380, RSMo 1978, the employer is required to file the report of injury in the division within 10 days after knowledge thereof. The report was filed and on October 30, 1978, it was included in the legal file herein. It states as to how the accident occurred, that the employee was "Maliciously pushed by another employee into steel gate" as he was "Leaving for Drs. appointment", and it described the injury, "Rammed into a steel gate, and dislocated left shoulder and torn ligaments." Appellant's claim was filed February 2, 1979, and respondents, on February 8, 1979, denied that he was involved in the alleged accident on October 17, 1978, arising out of and in the course of his employment, or that he was injured. There are cases cited under § 287.380 holding that the employer's report of injury required thereunder is analogous to a pleading and as such is admissible as admissions against interest. *Tralle v. Chevrolet Motor Co.*, 230 Mo.App. 535, 92 S.W.2d 966, 970[3, 4] (Mo.App.1936), and cases cited. It is true that in the *Tralle* case and those cited, the report of injury was in evidence and there was no objection thereto, while here the Commission apparently considered it as a part of the legal file, the same as appellant's claim for compensation, and respondent's denial thereof, and there is no suggestion or citation of authority that the Commission was without any authority to consider these documents, all required to be in the legal file. The matter of the effect of the report of injury was last considered in *Hall v. Denver-Chicago International, Inc.*, 481 S.W.2d 622 (Mo. App.1972), where as here, the employer denied the claimant's compensation claim after the report of injury was filed. It was held that the report of injury (as a pleading) had been abandoned, and thus it was

not a binding admission, "but can be weighed by the trier of the fact in the same manner as any other admission made by a party. Such an admission is not conclusive but is to be considered along with other facts and circumstances attending the case, but nothing more." 481 S.W.2d 628[9, 10]. The report of injury here is at least consistent with appellant's hearing testimony.

■ Considering appellant's testimony alone, in its favorable light and disregarding all evidence which might support a different finding than the one the Commission made, *Hall,* supra, page 625[1, 2], the award of the Industrial Commission must be ruled to have been supported by substantial and competent evidence, which is the standard by which the award must be measured. *Bone v. Daniel Hamm Drayage Co.,* 449 S.W.2d 169 (Mo.1970). Neither the circuit court nor this court may substitute its judgment for that of the Commission, *McCue v. Studebaker Automotive Sales, Inc.,* 389 S.W.2d 408, 411 (Mo.App.1965), although the Commission might have come to a different result under the evidence. Clearly, the Commission had found that appellant was not the aggressor in the altercation, as he must not have been if he were injured in the course of his employment under *Staten v. Long-Turner Construction Company,* 185 S.W.2d 375, 381[12] (Mo.App.1945).

The judgment is reversed and the case remanded with directions to reinstate the award of the Industrial Commission.

All concur.