Donna ENGELBERT, Bo Jensen Engelbert b/n/f Gabriel Perdue Engelbert b/n/f F. Jack Engelbert and Donna Dee Engelbert, Co-Executors of Estate, Appellants,

v.

Virgil E. FLANDERS, M.D., Briarcliff Medical Associates, Inc., Respondents.

No. WD 33805.

Missouri Court of Appeals, Western District.

March 6, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 1, 1984.

---

Bart L. Strother, Morris & Foust, Roger M. Phillips, Jackson, Dillard, Brouillette, Weisenfels, Phillips & Wood, Kansas City, for appellants.

Robert W. Freeman, Ken D. Rogers, Freeman, Fredrick, Bennett & Rogers, P.C., Springfield, for respondents.

Before MANFORD, P.J., and CLARK and KENNEDY, JJ.

CLARK, Judge.

In this medical malpractice suit, defendants had a verdict from the jury and plaintiffs-claimants appeal. Affirmed.

The points raised by appellants are limited to claims of error in rulings by the trial court on objections to closing arguments. The facts of the case therefore need only be stated briefly to place the closing arguments in the perspective of their context at the time the questioned rulings by the trial judge were made.

Plaintiffs' decedent, Steven Engelbert, noted a suspicious body abnormality in August, 1977, and sought advice from defendant Dr. Flanders. Engelbert was assured by Flanders there was no cause for concern but Engelbert was instructed to return if the problem persisted. In April, 1978, Engelbert did return and was examined by defendant Dr. Fakhoury, an associate of Flanders. A diagnosis of cancer was made and Engelbert was referred to a urologist who surgically removed the affected organ. The urologist also recommended removal

of lymph nodes and a course of chemotherapy, but Engelbert declined. Instead, he went to Mexico and participated in an unorthodox treatment program of diet and enemas.

After some six weeks of unorthodox treatment, Engelbert detected a mass in his abdomen and returned to the urologist. It was then discovered that the cancer had spread to involve the liver. Treatment was undertaken by the urologist, but Engelbert eventually succumbed to the disease in June, 1979. The basis for the wrongful death action by Engelbert's survivors, appellants here, was the failure of defendant physicians to diagnose and treat the condition when Engelbert first consulted them in August before the spread of the disease.

The first point of asserted error relates to evidence given by defendants' expert witness, Dr. Skinner, and the entitlement of plaintiffs' counsel to comment on inconsistencies in the opinion evidence he gave. A significant issue in the case was whether Engelbert's cancer had involved other body organs, particularly the liver, by April, 1978 when the surgery was performed or whether the metastasis took place during the six weeks of unorthodox treatment following that date. The thrust of the defense was that a 90% curability rate yet was available to save Engelbert in April, 1978 had he consented to the orthodox treatment of removal of the lymph nodes and chemotherapy as recommended. On the plaintiffs' side, it was asserted that the April date was too late and that only a proper diagnosis the previous August could have afforded a prospective recovery by orthodox treatment.

At trial, Dr. Skinner testified without equivocation that in his opinion, the cancer had not spread to Engelbert's abdomen in April, 1978. On cross-examination, plaintiffs' attorney asked Skinner if a question had been asked and an answer given by Skinner in a deposition, proceeding then to read the question and answer. After a defense objection was overruled, Skinner replied, "Well, I just would like to reiterate that fact." The substance of the deposition

testimony was that the matter of progress of the cancer was speculative, but it was conceivable there was liver involvement in April. There was no further exchange by counsel and the witness on the subject.

In plaintiffs' closing argument, counsel attempted to discredit Skinner's testimony as to the date when Engelbert's cancer spread by noting inconsistency between the in court and the deposition statements. An objection to that course of argument was sustained. Plaintiffs' point contends the argument should have been permitted because Skinner had been impeached by the deposition statement. The issue is whether the cross-examination described above accomplished the introduction in evidence of a prior inconsistent statement by Skinner which would then be appropriate for comment in closing argument. We conclude on authority long established, that it did not.

■ The procedure for impeaching a non-party witness by showing a prior statement inconsistent with the witness's trial testimony is set out in *Aboussie v. McBroom*, 421 S.W.2d 805, 807 (Mo.App. 1967). The foundation to be laid requires that the witness first be asked whether he made the prior statement, quoting it and the precise circumstances under which it was made. If the witness admits making the statement, he stands impeached. If the witness denies or equivocates about having made the statement, the examiner may then introduce evidence showing the witness did make the prior inconsistent statement.

In this case, an attempt was made to lay the foundation for impeachment of Skinner's testimony as to Engelbert's condition in April, 1978. The question and answer were read from the deposition and Skinner was asked whether he had made the prior statement. The witness, however, neither admitted nor denied the statement, giving instead the enigmatic response quoted above.

■ Careful scrutiny of the transcript suggests Dr. Skinner's observation, "I just would like to reiterate that fact," was not

an answer to the impeachment foundation inquiry at all. Instead, "that fact" appears more likely to have been related to a portion of defense counsel's objection immediately preceding in which he noted the deposition to have been obtained before Dr. Skinner reviewed CAT scans performed on Engelbert. There was no fact, in the normal sense of that word, contained in the deposition response. Taken as a reply to the direct question of whether the witness did or did not make the impeaching statement, the answer plaintiffs rely on to constitute an admission makes no sense.

Plaintiffs were entitled to argue inconsistency by Dr. Skinner in the expression of his expert opinion if Skinner either admitted to having made the prior inconsistent statement as read from the deposition or denied making the statement thus entitling plaintiffs to prove the previous statement. Plaintiffs do not contend the latter which would be unavailing to them because the deposition in question was not offered or received in evidence. Skinner was therefore impeached only if the prior inconsistent statement was in evidence by his own admission that such had been his earlier testimony. The response by Skinner quoted above was at best an equivocation subject to several different interpretations.

The rule has generally been stated that the opposing party has the right to prove a prior inconsistent statement unless the witness makes a clean-cut admission that he made the very statement alleged. *State v. McClain*, 531 S.W.2d 40, 44 (Mo.App.1975). The cases which apply this rule usually involve the situation in which a qualified response by the witness has been held not to bar the opponent from proving the impeachment matter. In the present case, the response by Dr. Skinner was not a "clean-cut admission," despite plaintiffs' current argument that it was taken as such at trial, and under the long standing rule controlling impeachment of non-party witnesses, plaintiffs were entitled to introduce the deposition matter in evidence. They failed to do so and were thereby foreclosed in arguing the subject to the jury.

The second point presented on this appeal argues that the trial court erred in failing to sustain objections to defendants' closing argument about Engelbert's election to forego conservative treatment after the surgery in April, 1978. According to plaintiffs, the argument erroneously sought to inject contributory negligence as a decision related factor when contributory negligence had not been pleaded or included in jury instruction. The gist of the argument is contained in the following extracts:

"Now, this will be the primary issue in this case: the cause of Mr. Engelbert's death. That is very important, as to who caused the death: did Mr. Engelbert himself cause the death when he refused the recommended treatment * * * "

"I submit to you, ladies and gentlemen, that the reason Mr. Engelbert is not here with us today is because Mr. Engelbert, after he had a confirmed case of cancer, turned his back on modern medicine."

In a medical malpractice case, one of the elements the claimant must establish to make a submissible case is a causal connection between the act or omission of the physician and the injury the claimant sustained. *Cebula v. Benoit*, 652 S.W.2d 304 (Mo.App.1983). Where the defendant has not been shown to have been negligent as a matter of law, the issue of negligence will invariably be a question of fact. If supported by the evidence, the argument may be made by defendant that he was not negligent, that his conduct was not the effective, proximate cause of the injury but that the injury was the direct result of someone else's conduct. *Hoehn v. Hampton*, 483 S.W.2d 403, 409 (Mo.App.1972).

In this case, plaintiffs' theory of recovery depended on the proposition that diagnosis and treatment of the cancer in August, 1977 offered the only reasonable prospect for a cure and that a failure of the diagnosis at that time led inevitably to Engelbert's subsequent death. Defendants' evidence was, to the contrary, that the prospects for a cure were no less in April, 1978 and had Engelbert availed himself of

conventional medical resources at that time, he would have been equally well served as by an earlier detection of the condition. Quite apparently, defendants' evidence placed before the jury the issue of whether Engelbert's choice to reject conventional treatment was the cause of his ultimate death.

 The line separating contributory negligence and proximate causation is seldom clearly etched. The closing argument excerpted above could well be construed, as appellants contend, a reference to the contributing fault of Engelbert in seeking out and submitting to the unorthodox treatment in Mexico. The thrust of the argument also attacks, however, the issue of causation, not because of the nature of the treatment in Mexico, but because Engelbert rejected the course of treatment offering a high success ratio according to defendants' evidence. There was an integral connection among the three circumstances, the date of diagnosis, the prospect for recovery with orthodox treatment and the rejection of the treatment by Engelbert. As the court pointed out in *Lewis v. Bucyrus-Erie, Inc.*, 622 S.W.2d 920, 927 (Mo. banc 1981), the fact that an argument may touch on two issues, one legitimately in the case, causation, and the other not, contributory fault, does not per se require its rejection.

The trial court ruled in this case to permit the argument, rejecting appellants' complaint that defense counsel was interposing the question of contributory negligence. As we have frequently stated, control of final argument rests largely in the discretion of the trial court and rulings are not to be disturbed on appeal except on a showing of abuse. *Keller v. International Harvester Corp.*, 648 S.W.2d 584, 593 (Mo. App.1983). The ruling here not only is free of those elements which constitute an abuse of trial court discretion, but is also legally tenable under the same analysis as was expressed under similar facts in *Lewis v. Bucyrus-Erie, Inc., supra*. There was no error meriting the grant of a new trial

by reason of the content of closing argument.

The judgment is affirmed.

All concur.