William MALOY, Claimant–Appellant

v.

CABINET & BATH SUPPLY, INC.,
Employer–Respondent.

No. 27017.

Missouri Court of Appeals,
Southern District,
Division One.

April 12, 2006.

Stacey R. Page, Springfield, for appellant.

Maria W. Campbell, St. Louis, for respondent.

JOHN E. PARRISH, Judge.

This is an appeal of a final award of the Labor and Industrial Relations Commission (the commission) denying workers' compensation benefits to William C. Maloy (claimant). Claimant contends the commission erred in finding the injury he sustained did not arise out of and in the course of his employment. Claimant further contends that the commission erred in entering the award of no compensation because no findings or conclusions were made regarding claimant's allegations that witnesses lied under oath with respect to testimony adduced at the hearing before the administrative law judge. This court affirms.

Claimant filed a claim asserting that he was injured April 20, 2001, in the course of his employment while working as a custom cabinet maker for Cabinet & Bath Supply, Inc. (employer). The injury he claims was sustained while working for employer was diagnosed in May 2001 as a herniated lumbar disc. He underwent surgery to repair the injury May 17, 2001. He returned to work four days following surgery. Claimant testified that he has not been able to perform the full duties required for his work. Claimant again experienced pain in his lower back in September 2002. He was diagnosed with a second herniated disc at the same level as the prior injury.

Claimant testified that on April 20, 2001, he finished building a large fireplace mantel and moved it from employer's warehouse to its showroom. The mantel was about nine feet high. It consisted of two pieces, a top and a bottom. The top piece was approximately three feet four inches tall. The bottom was approximately five feet eight inches tall. They were moved from the warehouse by claimant and a co-worker, Brian Kaiser. The men used an 18–inch workbench to lift the top piece off the bottom piece. Claimant testified that he felt a pain in his back when he stepped backwards off the workbench. He stated he almost dropped the mantel; that there was a jerk when he caught the mantel. He said that co-workers offered to help move the mantel; that he did not do any

more lifting that day. Claimant said that all he did after this occurred was screw the mantel in place after it was assembled in the showroom. He said he told his supervisor, Kevin Bean, that he had injured his back.

Kevin Bean recalled claimant's involvement in moving the mantel. He did not recall whether claimant lifted the mantel. He stated that claimant did not inform him that he had injured his back and did not appear to have been injured.

Brian Kaiser helped build and move the mantel. He did not recall anything unusual happening on April 20. He did not remember the mantel almost dropping or that claimant had needed help. He testified that it took him and claimant two attempts to lift the top piece into place in the showroom; that no one helped them lift the mantel.

Two other workers, Paul Barton and Mike Hambelton, were present when the mantel was moved. Neither saw the mantel almost drop or recalled claimant saying he had hurt his back or acting like he was hurt. Neither recalled him asking for help in moving the mantel.

On Saturday, April 21, 2001, claimant had scheduled installation of cabinets for Joan Summers, a private customer. He testified that he called her and told her he had injured his back; that he would not be able to install her cabinets unless he could find someone to assist him. He said he called Brian Kaiser after he talked to Ms. Summers; that he reminded Kaiser of what had happened while moving the mantel and asked Kaiser to help install the cabinets for Ms. Summers. Kaiser agreed to help.

Brian Kaiser testified. He said claimant had asked him to help install Ms. Summers' cabinets on Monday or Tuesday prior to the scheduled Saturday installation; that this was before the mantel had been moved. He said claimant said nothing about injuring his back; that claimant did not appear to be in pain and did not have difficulty installing the cabinets.

On April 23, 2001, the Monday following installation of Ms. Summers' cabinets, claimant called Kevin Bean and said he was going to see a chiropractor. He saw Dr. Kandy Ackley on April 24 and 25. Dr. Ackley's records report that claimant suffered low back pain and bilateral leg pain for one day that began "immediately after he was lifting/installing cabinets by himself for [employer]." Dr. Ackley referred claimant to an emergency room.

Claimant was seen at the emergency room at Cox Hospital on April 26, 2001. Hospital records reflect that he reported his pain had begun two days prior to the visit. They state that claimant denied any recent injury. Claimant reported previous incidents of back pain. An MRI revealed claimant had suffered a herniated disc at L4–5. He was referred to Dr. Bert Park for surgery. Claimant saw Dr. Park on May 10, 2001. Surgery was performed on May 17, 2001. Dr. Park's medical records make no mention of an injury at work.

On September 29, 2002, claimant was at the Cox Hospital emergency room complaining of back pain "waxing and waning" since surgery and having gradually increased the preceding week to ten days. Claimant was diagnosed with a herniated disc at the same level as the one for which he previously had surgery. He was sent to Cox Health Systems Outpatient Rehabilitation Services on October 8, 2002, where he reported an on-the-job injury that occurred April 20, 2001, while lifting a heavy mantel.

Claimant was evaluated by Dr. John Charles Mace, a neurosurgeon. An MRI disclosed a recurrent disc herniation at L4–5. Dr. Mace concluded that the course

of treatment should be to redo the laminectomy and microdiskectomy. Dr. Mace stated that he did not discuss anything about an injury occurring in April 2001 with claimant; that there was nothing in the history and physical he received when he first saw claimant about an injury that occurred at work in April 2001.

Employer presented testimony of Dr. Norbert Belz, a physician specializing in occupational and environmental medicine, and Dr. Dirk Aylander, an orthopedic surgeon. Dr. Belz testified that it was not plausible for a person with a herniated disc to install cabinets the day following the incident that produced the ailment. His opinion was that the lifting of the mantel on April 20, 2001, was not a substantial factor in the development of the herniated disc that required surgery. He gave the further opinion that the herniated disc that was diagnosed on September 29, 2002, was a new injury, not a recurrent herniation.

Dr. Aylander's testimony was consistent with that of Dr. Belz. His opinion was that claimant's initial injury was not related to lifting the mantel on April 20, 2001; that the subsequent disc injury was a new injury.

The administrative law judge's conclusions of law included:

> After carefully reviewing all of the evidence, I find that the injury did not occur as the claimant describes on April 20, 2001. This is based on the fact that none of the other people who testified that they were present when the mantel was lifted, moved, and reassembled remembered anything about the mantel almost being dropped, the claimant hurting himself, needing help, acting like he was in pain, or anything else unusual at all happening regarding this mantel. Also, Brian Kaiser, who helped the claimant with the mantel and the cabinet installation the next day, did not remember anything unusual or any complaints being made by the claimant of his back hurting. He was contacted at the beginning of the week to help, prior to the alleged injury, not the day before the installation. I also found him to be a credible witness. Also, Ms. Summers was inconsistent in when the call was made to schedule the installation.
>
> But one of the most important factors is the lack of a history of this injury occurring in the medical records for months after this happened. The claimant gave conflicting histories mainly regarding installing cabinets by himself on Monday, April 23, 2001, but nothing about Saturday, April 21, 2001, moving and installing the mantel, until October 8, 2002, 17½ months after the alleged injury. The history given in medical records is given much weight as it has an inherent reliability as patients will give an accurate history to health care providers who are going to be treating them for the described problems. On this basis, I give these contemporary histories great weight and have done so in this case. Given all the facts as a whole, I do not find claimant's description of the facts surrounding the alleged injury and shortly afterwards credible.

The administrative law judge denied compensability.

The award was submitted to the commission for review as provided by § 287.480.[1] The commission found that the award of the administrative law judge was supported by competent and substantial evidence and affirmed the award. The award and decision of the administrative law judge was incorporated by reference in

---

1. References to statutes are to RSMo 2000.

the commission's final award denying compensation.

Claimant's first point on appeal argues that the commission erred in entering an award denying compensation. Claimant contends the award denying compensation was not based upon competent and substantial evidence because the commission improperly relied on out-of-court statements by a key witness regarding the timing of claimant's injury; that this was reversible error.

The administrative law judge's findings of fact (which were adopted by the commission) include the statement:

> On cross-examination, [Ms. Summers] was asked about conflicting testimony between a statement given previously and the testimony at hearing. At one time she says it was 3–4 weeks between the call and installation and here she says it was 3–4 weeks from when she gave him a deposit to installation. She said that the claimant came and did the work with assistance from a helper. She said the claimant was basically watching the other person. She recalled the claimant had on a back brace.

The issue to which Ms. Summers' testimony was directed was whether claimant injured his back while at work on the day before he was scheduled to install her cabinets. Claimant testified that he called Ms. Summers after injuring his back April 20 and told her that unless he could get someone to help install her cabinets the next day, as scheduled, he would have to delay the installation because he had hurt his back.

During cross-examination of Ms. Summers, employer asked about a telephone conversation she had with an adjuster representing either employer or its insurer. Ms. Summers was asked if she remembered being asked when she first became aware claimant was having back problems, and if she said she had to wait three weeks to a month in order for her cabinets to be installed because claimant was having back problems. Ms. Summers explained that any reference to waiting for the cabinets would have been directed to how long she had to wait to get the cabinets after she paid claimant a deposit. She denied telling the adjuster that three to four weeks passed after claimant told her he had hurt his back. She stated she did not remember a number of questions being asked her. The gist of her testimony was that she either had not understood the adjustor's questions, or the answers she was represented as having given were inaccurate. Ms. Summers stated her cabinets were installed the day after claimant called her and said he had hurt his back.

Following cross-examination of Ms. Summers, employer's attorney sought to introduce in evidence a copy of questions and answers he asserted had been asked by the adjuster and answered by Ms. Summers in a telephone conversation. Claimant objected to the exhibit. The attorney for employer then withdrew the offer. Thus, there was no evidence before the commission that Ms. Summers made prior statements that were inconsistent with the testimony she gave before the administrative law judge.

In order to impeach a non-party witness' testimony by showing a prior inconsistent statement, the witness must first be asked whether he or she made the prior statement, quoting it and the precise circumstances under which it was made. *Engelbert v. Flanders,* 670 S.W.2d 19, 21 (Mo.App.1984). "If the witness admits making the statement, he [or she] stands impeached. If the witness denies or equivocates about having made the statement, the examiner may then introduce evidence showing the witness did make the

prior inconsistent statement." *Id. See also Lindsay v. Mazzio's Corp.*, 136 S.W.3d 915, 922–23 (Mo.App.2004); *Long v. St. John's Regional Health Center, Inc.*, 98 S.W.3d 601, 606 (Mo.App.2003).

■ Ms. Summers did not admit making prior statements that were inconsistent with her testimony. She testified that the prior questions and answers recited to her were either inaccurate or that the questions had been misunderstood by her. Employer's attorney did not introduce evidence of prior inconsistent statements. No evidence was before the commission of inconsistent statements. Questions asked in an effort to impeach Ms. Summers on the basis of prior inconsistent statements were not evidence for consideration by the commission. *Engelbert, supra,* at 22.

■ The recitation in the commission's findings regarding inquiries made by the adjuster and prior responses to those inquiries was of no significance to the issue before it. The decision of the commission is supported by competent and substantial evidence regardless of the inapplicability of the cross-examination of Ms. Summers. The evidence includes that none of the witnesses to the moving of the mantel on the day claimant contends he was injured remembered the mantel dropping or claimant contending he was injured. None of the witnesses recalled any additional help being required to move the mantel or anything unusual in moving it. Brian Kaiser testified that claimant did not appear injured or appear to be in pain on April 21, 2001, the day following the moving of the mantel. Additionally, claimant's medical records lack a history of the alleged injury for almost one and one-half years thereafter.

The commission erred in giving any consideration to the cross-examination of Ms. Summers regarding allegations of prior inconsistent statements by her. The assertion, however, that the award was not supported by competent and substantial evidence is incorrect. Point I is denied.

Point II asserts that the commission erred in denying claimant compensation for the reason that employer's objection to testimony about claimant's statements to Ms. Summers concerning his alleged injury was improperly sustained; that the testimony was admissible to show claimant's state of mind at or near the time claimant asserted he had been injured. Claimant relies on *Lewis v. Lowe & Campbell Athletic Goods Co.*, 247 S.W.2d 800 (Mo.1952), in support of Point II.

During Ms. Summers' direct examination, she was asked if she had a conversation with claimant prior to the installation of cabinets at her house. She answered, "Yes." The following questions were asked Ms. Summers and the following answers given:

Q. ... And do you recall that conversation?

A. I do. We talked about when he thought he could possibly get my cabinets installed, and we were trying to set up a time to do so.

Q. Okay. And did—what did he state to you regarding the installation of the cabinets?

A. He told me that he was unsure whether he would be able to install those due to the fact he was having back trouble and was not able to lift the cabinets, so the installation was pending upon whether he could get himself some help to get them into the house.

Q. And did he state to you how he had hurt himself?

A. Yes.

Q. And what did he say?

A. He told me that he had—

928

The testimony was interrupted by a hearsay objection by employer's attorney. The objection was sustained. An offer of proof followed in which Ms. Summers stated that what claimant told her was that he had injured himself installing a mantel.

 "The requirements for admissibility under the state of mind exception to the hearsay rule are that the out-of-court statement must be a contemporaneous statement reflecting the then existing state of mind of the declarant, and that the then existing state of mind must be relevant to a genuine issue in the case." *Kelly v. St. Luke's Hosp. of Kansas City*, 826 S.W.2d 391, 396–97 (Mo.App.1992). Claimant's statement to Ms. Summers was not a contemporaneous statement in that it was not made at the time of the event that produced the genuine issue in the case, whether an injury occurred when claimant lifted a mantel. Declarations after an alleged injury regarding the circumstances in which the injury was sustained are inadmissible as competent evidence. *Goetz v. J.D. Carson Co.*, 357 Mo. 125, 206 S.W.2d 530, 533–34 (1947).

The litigated event in *Lewis*, the case on which claimant relies, was an accident in which Mrs. Lewis' husband was killed. The question was whether the event was within the ordinary scope of the husband's employment. He was a salesman who called on schools for the purpose of selling athletic equipment. The accident that took Mr. Lewis' life occurred during early morning hours on a Sunday. The evening before, Mr. Lewis told his wife he would be leaving home early the next morning because there was unfinished work in a town where he called on a school. The court discussed the statement's admissibility:

We think the statement made by Lewis to his wife on the evening of October 1st in connection with his act of setting the alarm clock to awaken him at 3:00 a.m., amounted to a declaration made in connection with an act immediately preparatory to his mission and, in that sense, could be held to constitute a part of the res gestae. Preparations for an early morning departure are, for obvious reasons, frequently made the evening before. However, we are convinced that if, under the evidence, it may reasonably be inferred that these statements were made by Lewis as spontaneous and truthful declarations of a then present intent on his part to make the trip for the purposes stated by him, then they are admissible, not as a part of the res gestae, but as circumstances tending to prove the fact that the trip was made for those purposes.

247 S.W.2d at 804.

The situation in *Lewis* differs from the one in this case in that it occurred prior to the litigated event, the purpose of the subsequent automobile accident. In this case the litigated event, whether an accident occurred in moving a mantel, took place prior to claimant's statement to Ms. Summers. *Goetz*, discussed above, declares such statements inadmissible. Point II is denied.

Point III is directed to events that occurred between the time claimant sought review of the administrative law judge's decision and the time the commission issued its final award. Claimant filed a motion with the commission entitled "Motion to Submit Newly Discovered Evidence and for a Remand." It alleged that newly discovered evidence indicated some of the testimony presented at the hearing before the administrative law judge "may have been false and fraudulent;" that the information could not have been discovered until after the final award had been entered by the administrative law judge. The motion requested an order permitting claim-

ant to submit newly discovered evidence, an evidentiary hearing, or remand for an evidentiary hearing.

The commission entered an order remanding the case to the Division of Workers' Compensation (the division) "to conduct a hearing on the allegations contained in [claimant's] Motion." Thereafter, the commission entered its final award denying compensation. Its award adopted the final award of the administrative law judge, which made no reference to the allegations directed to the "newly discovered evidence" of claimant.

Point III alleges that the commission erred in entering the award denying compensation because the award was not based on competent and substantial evidence because the commission made no findings or conclusions regarding claimant's "newly discovered evidence." The evidence claimant introduced at the hearing included testimony of Paul Barton, Mike Hambelton, Kevin Bean, and a tape-recorded conversation between claimant and Paul Barton. The tape-recorded conversation and a transcript of the tape-recorded conversation were admitted in evidence. Claimant's co-worker, Paul Barton, stated in that conversation that he "got swore in up there on that stand and [he] lied."

At the hearing, Paul Barton testified that he told the truth at the first hearing; that he had not lied under oath. He said he had lied in his conversation with claimant. He said he did so in an attempt to get his supervisor, Kevin Bean, fired. Paul Barton said he was mad at Bean. He thought Bean would be fired if he told claimant he and others had been told to lie.

Mike Hambelton testified that he had not lied during the hearing and he had not been involved in Barton's plan to get Bean fired. Hambelton said no one told him to lie.

Kevin Bean testified that he had not told anyone to lie. David Paris testified that he had not told anyone to lie. Brian Kaiser testified that no one told him to lie.

Claimant relies on *Brown v. Sunshine Chevrolet GEO, Inc.*, 27 S.W.3d 880 (Mo. App.2000), and on § 286.090 as authority for the error he asserts in Point III. Section 286.090 states:

In every appeal coming before the commission from any of the divisions of the department, the commission shall prepare and file a written statement giving the commission's findings of fact and conclusions of law on the matters in issue in such appeal together with the reasons for the commission's decision in the appeal; except that a decision of a division of the department meeting the requirements of this section may be affirmed or adopted without such written statement.

In *Brown*, a workers' compensation claim had been dismissed by a legal advisor of the division for failure to prosecute. A notice regarding actions required in the proceeding had been sent to an address other than claimant's attorney's current address. After the dismissal order was entered and the attorney learned of it, claimant sought review by the commission, asserting that "[p]roper parties and their counsel did not receive notice of dismissal pursuant to [certain statutes and regulations]." *See Brown*, 27 S.W.3d at 882. The commission thereafter entered an order stating that the claim had been dismissed for failure to prosecute because the claimant and his lawyer had failed to appear at a scheduled hearing. The order stated that the claimant in the case, by his attorney, alleged facts that, if true, might constitute good cause for the failure to act in a timely manner. The order remanded the matter to the division with instructions

that it schedule a hearing and fully develop certain facts, and that the division then forward a transcript of the hearing to the commission for determination of the issue in question.

Following the hearing by the division, the commission issued its order affirming the order of dismissal of the claim. However, no findings were made on whether notice had been received of the original hearing at which the claimant and his attorney did not appear, the subject of the remand to the division. This court, relying on requirements of § 286.090, RSMo Supp.1995,[2] reversed the order of dismissal and remanded the case with a direction to make findings of fact and conclusions of law on the issues necessary to decide the case. Claimant in this appeal contends the same result should be reached in this case. This court does not agree.

In *Brown*, the issue for determination was whether there was good cause for the attorney for the claimant in that case failing to take required acts necessary to prosecute the case. At issue was whether notice of a hearing had been sent to the correct address. No finding of fact or conclusion of law was made on that issue. Requirements of § 286.090 were not met. Failure to meet those requirements precluded this court from addressing the allegations of error directed to the actions the commission took in *Brown*.

 In this case, the issue before the commission was whether claimant sustained a work related accident on April 20, 2001, while lifting a mantel. Claimant's "newly discovered evidence" did not go to the facts that did or did not demonstrate what happened, but went to questions of credibility. The division had previously made extensive findings regarding whether a work-related accident occurred. Those findings were adopted by the commission and made part of its order denying compensation. The evidence at the hearing before the division, following remand, did not change the conclusions reached. Failure to further address questions of credibility in the findings of fact and conclusions of law was not contrary to requirements of § 286.090.

The commission found that the evidence did not support claimant's description of the facts surrounding the alleged injury. The lack of specific findings of fact or conclusions of law regarding allegations contained in the tape-recorded conversation reviewed by the division and the commission does not hinder this court's review. Point III is denied. The award of the commission is affirmed.

RAHMEYER, P.J., and LYNCH, J., concur.

---

**2.** The content of § 286.090, RSMo Supp. 1995, is the same as the RSMo 2000 revision of that statute.